The Indiana, Bloomington and Western Railway Company v. Wheeler.

No. 13,301.

# THE INDIANA, BLOOMINGTON AND WESTERN RAILWAY COMPANY v. WHEELER.

RAILROAD.—*Highway Crossing.*—*Wilful Injury.*—A team drawing a loaded wagon was seen by the engineer of an approaching train to be coming on an up grade toward a public crossing, at a point where trains could be seen for more than nine hundred feet. The engineer sounded the signals required by statute, and also sounded danger signals. The driver of the team, a youth twenty years old, and familiar with the crossing, was lying upon the wagon seemingly asleep or otherwise unconscious. The engineer did not see the driver, but supposed he was walking on the opposite side of the team. Seeing that the team would not be halted, the engineer, when still several hundred feet from the crossing, made every effort to stop the train, but without avail, and the driver was killed.

*Held*, that the facts do not show a cause of action for either a negligent or a wilful injury.

From the Parke Circuit Court.

*C. W. Fairbanks, O. Gresham, P. S. Kennedy* and *S. C. Kennedy*, for appellant.

*V. Carter, S. D. Puett* and *H. E. Hadley*, for appellee.

MITCHELL, J.—This was a suit by Samuel Wheeler against the Indiana, Bloomington and Western Railway Company, the gravamen of the complaint being that the defendant company wrongfully caused the death of the plaintiff's minor son, Walter V. Wheeler, on the 9th day of September, 1884, by " wilfully, knowingly, and with gross negligence running one of its engines and trains upon him at a highway crossing.

The pleading, which is in one paragraph, seems to have been framed with the purpose that it should be good either as a complaint for wilfully and intentionally causing the death of the plaintiff's son, or for wrongfully causing his death, by the negligent conduct of the defendant's agents and servants. In some respects the complaint proceeds upon both theories. For the appellant it is insisted that it fails to state facts suf-

ficient to constitute a cause of action on either theory. See *Gregory* v. *Cleveland, etc., R. R. Co.,* 112 Ind. 385.

Without pausing to consider the complaint, it is quite certain, assuming it to have been sufficient in both its features, that the evidence fails entirely to make a case against the appellant in either.

There is no substantial disagreement between the witnesses in respect to the material facts. The testimony shows that on the 9th day of September, 1884, the plaintiff's son, twenty years of age, was engaged, as he had been for several days prior thereto, in hauling wheat from the farm where it was being threshed to the elevator at a station on the appellant's line. The boy was well acquainted with the crossing, having been raised in the vicinity, and having passed over it a great many times. Trains approaching on the railway track could be seen without difficulty for a distance of from 900 to 1,000 feet from the highway over which the young man was proceeding on a loaded wagon, up a rising grade, toward the crossing of the railway track. A passenger train, running at the usual rate of about thirty miles an hour, approached the highway. The highway crossing signals were given as the statute requires. The whistle was next sounded for the station. Seeing a team approaching the railway, apparently without a driver, the engineer gave the usual danger signals. Observing that the team kept on its way regardless of the signals, which were continued, the engineer, when several hundred feet from the crossing, and as soon as he apprehended that the team might not be halted, made every effort in his power to stop his engine, so as to avoid a collision. A lady near by the highway, seeing the boy lying upon the top of the loaded wagon asleep, as she supposed, tried to arouse him by making outcry. A moment before the engine came into collision with the wagon the boy raised up, but it was too late. The engine came upon the wagon with such force as to shatter it to pieces, notwithstanding the efforts of the engineer to stop his engine. The boy

only survived the collision about two hours, during all of which time he was apparently unconscious.

The evidence tended to show that the young man had been languid and indisposed for several days prior to the accident, but not to such an extent as to be apparently unable to perform his customary work.

The engineer testified that he saw no one on the wagon, and supposed the driver of the team was walking on the opposite side. When he discovered that the team kept on its way, notwithstanding the danger signals, he at once reversed his engine, and employed the air-brakes and every other method and appliance at hand to stop the train. He had its speed so checked when the collision occurred, that the train only ran over the crossing about fifty yards, when it was stopped. A baggageman who looked out of the car door when the danger signals were sounded saw a person, as he supposed, lying on top of the loaded wagon.

It is contended in support of the finding and judgment, that it was the duty of the engineer to have looked out for, and seen the boy, and to have apprehended or known of his unconscious or helpless condition in time, so that he might have arrested the motion of the train and prevented the collision. The failure to stop the train when he must have known there was some one upon the loaded wagon, it is said, evinced such a reckless disregard of human life, on the part of the engineer, as justified the jury in drawing the inference that there was a constructive intent to inflict injury. We can find nothing in the record to justify or sustain the views thus urged.

What is essential to constitute a sufficient averment or finding of a wilful injury has been so fully discussed in recent decisions of this court that it would involve only useless repetition to elaborate the subject here. *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250, and cases cited ; *Gregory* v. *Cleveland, etc., R. R. Co.*, *supra*, and cases cited.

It is enough to say, the admitted facts come far short of

making the present case one of wilful injury. It is well settled that those who have the control and management of trains must be on the lookout for persons at highway crossings, and that it is their duty to use all reasonable efforts to avoid injuring persons who are on or about to come upon the track when there is reasonable ground to apprehend that such persons are unconscious, or are in such a situation as to be unable to escape. An engineer is not bound to anticipate that the driver of a team, which is seen slowly approaching the track, is asleep, nor is he bound to stop his train, or even to check its speed the moment he sees a team approaching, even though he might see the driver reclining on the load. He has a right, having signalled his coming, and his train being in plain sight from the highway, to assume that the team will be halted before it reaches the track. *Cincinnati, etc., R. W. Co.* v. *Long*, 112 Ind. 166, and cases cited. This is especially so in a case like the present, where the advancing team was pulling a loaded wagon up grade toward the railroad track. *Indiana, etc., R. W. Co.* v. *Hammock*, 113 Ind. 1.

There is no dispute but that the engineer made every effort to stop the train as soon as he discovered that the team was keeping on its way. He says he did not see the boy on the loaded wagon. It would not be strange, having the engine in charge and exerting himself to the utmost to stop the train, if the engineer failed to see the boy as soon as others who were looking on. There is absolutely no ground whatever for the assumption that the engineer either purposely, intentionally or recklessly ran upon the boy.

That the unfortunate lad was on the highway, entrusted with a team, while in such a condition of health or unconsciousness that all efforts to arouse him to a sense of the impending peril into which he was being carried, failed, until it was too late, was the gross fault of some one besides the railway company.

There is nothing in the evidence which even tends to sup-

port the theory that the engineer purposely ran his engine upon the boy, or that he acted recklessly in disregard of human life.

The judgment is reversed, with costs, with directions to the court below to sustain the appellant's motion for a new trial.

Filed June 19, 1888.