Filed June 19, 1896.

---

No. 1,758.

## Lake Erie and Western Railroad Co. v. Brafford, Administrator.

PERSONAL INJURY.—*Willfulness—Intent May be Actual or Constructive.—Death.*—Where an intention to commit the injury exists, whether that intention be actual or constructive. the wrongful act ceases to be merely a negligent injury, and becomes a willful act.

RAILROAD.—*Person on Track.—Duty of Engineer.*—A locomotive engineer has the right to presume that an adult walking upon a railroad track, apparently in possession of his faculties, will

Lake Erie and Western Railroad Co. *v.* Brafford, Administrator.

give way to the train and leave the track; but, before such engineer would be justified in continuing the speed of his train unchecked, he should himself be guilty of no wrong,

EVIDENCE.—*Willful Injury.*—*Constructive Intent.*—Evidence that a railway engineer, while running a train, at an unlawful speed, over a public street within the corporate limits of a city, saw a man, who was in fact a deaf mute, but of which fact the engineer had no knowledge, on the track a long distance in front of the train, and notwithstanding signals he saw made by two other men to the deaf mute, ran to within 40 feet of him without giving the danger signal or slackening the speed of the train, which ran over and killed the mute, justifies a finding by the jury that the killing was due to the constructive intent or willfulness of the engineer.

EVIDENCE.—*City Ordinance.*—Where a city ordinance is admitted in evidence without objection, and it has been admitted that it has been passed, the jury is justified in concluding that the ordinance was in force, though there was no proof of publication as required by law.

TRIAL.—*Instructions Presented After Argument Begun.*—A trial court may, without error, refuse to give instructions which were not signed or presented to it before the commencement of the argument to the jury.

From the Clinton Circuit Court.

*W. E. Hackedorn, J. B. Cockrum,* and *Bayless, Guenther & Clark,* for appellant.

*Brumbaugh & Combs,* for appellee.

GAVIN, C. J.—The sufficiency of the evidence to sustain the general verdict in favor of appellee is properly presented for our determination.

There is evidence to support the following state of facts:

At the time of the accident, upon August 27, 1893, appellant's railroad ran through Frankfort, a city of 8,000 people, along Ohio street, a public highway, passing through the central portion of the city. Appellee's decedent, who was a deaf mute, twenty-four years old, entered upon the track early Sunday morning, and walked thereon some distance west until at a point about seventy feet east of Jackson street he was struck by appellant's west-bound train, an extra,.

consisting of a caboose, tender, and engine, the latter running backwards.   Ohio street runs east and west, Jackson north and south.   The following plat will aid to a proper understanding of the situation :

Down Prairie street runs a creek, over which appellant has a trestle, or bridge, 238 feet long. Between Jackson and Clay streets appellant's track and that of the Clover Leaf Company are laid upon an embankment, twelve to eighteen feet high, which occupies the entire street. On top of this embankment there is no roadway, but there are convenient footways. The track is level and straight from the place of the accident to the east end of the bridge, and straight and nearly level from thence east to a point 180 feet beyond the corporation line, where the road begins to curve, and where a west-going train first becomes visible from Jackson street, this point being over 2,200 feet east of the bridge. Between Clay and Jackson streets there are two or three buildings on Ohio street. East of Clay there are numerous houses fronting on Ohio street. Ohio street, between Jackson and Clay, has been, for twenty years past, regularly traveled by footmen. There was no other bridge on Ohio across the creek than the railroad bridge, which had upon them no foot-walk.

About 5:30 a. m., decedent entered Ohio street, east of the trestle. At the east end of the trestle he entered upon appellant's track and walked briskly westward on the track until he reached a point about ten feet west of the switch stand, and about 147 feet from the west end of the trestle; there the train caught him.

The engine was a mogul engine in good repair, with Westinghouse air-brakes in proper working order. From the time it reached the corporation line until it passed the switch stand, the train was running twenty-five miles per hour. Beyond the curve, the station whistles were blown twice, for different street crossings. These whistles could all be distinctly heard west of Jackson street. The bell was rung from the corporation line

Lake Erie and Western Railroad Co. v. Brafford, Administrator.

on. The engineer says he saw the man from the time the engine rounded the curve, and kept him in view until he was struck, and that decedent just walked straight ahead without ever turning or looking around; that he gave the danger signal when about forty feet from the man, and immediately reversed his engine and applied the brakes, but was then upon him. He says he supposed the man would step off, and knew nothing of his infirmities, and did not intend to kill him. He states: "I was watching him all the time, from the time I saw him until I hit him, expecting him to get off, yes, sir. The way he was walking I supposed he was going to try to get to the crossing and get off, until, after I saw he wasn't making any effort to get off, I whistled."

He also states that he had the train under control and it was going about eight miles per hour; that the rails were damp from fog, which prevented the train from stopping as quickly as it otherwise would have done. After striking decedent, the engine passed over a distance of at least 200 to 225 feet before stopping. If, going at the rate of four to six miles an hour the train should have been stopped within ten or fifteen feet; at thirty miles, it should stop within 200. A city ordinance forbade the running of trains at more than four miles per hour.

One Brooks testified that he was on the embankment, a little west of Jackson street, on the Clover Leaf track, and heard the danger signal; that the train was then at the east end of the trestle; that he waved his arms at decedent and shouted, the latter being then four or five feet east of the switch stand.

Another man, Starkey, was walking east on appellant's track, and when near Main street, having seen the train approaching, and deceased apparently paying no heed, waved his arms in the air and motioned

to him, but he either did not see, or did not understand.

The engineer does not deny having seen these men thus waving their arms. He is silent as to them. Starkey says the danger signals were given while the train was on the bridge, but that the engine was not reversed until just about as he struck him.

Two paragraphs of complaint charged a negligent and one a willful killing. If the evidence sustains the latter, we need not consider the others. In deciding this question, appellee is entitled to require that we take that view of the evidence most favorable to him. This requires us, not only to regard, in the most favorable light, those facts as to which there may be conflict, but also all inferences which may be legitimately drawn therefrom in his behalf.

Counsel for appellant urge, first, that the engineer did everything that could have been done to avoid and prevent the accident; secondly, that in any event he was only negligent, and that appellee's decedent was also guilty of contributory negligence.

If the injury was willfully inflicted, then it is conceded contributory negligence is no defense. Cooley on Torts, 674; Beach Cont. Neg., 53.

The law is well established in Indiana, as in many other jurisdictions, that a direct and positive intent is not always requisite to constitute a willful act.

In *Pennsylvania Co. v. Sinclair*, 62 Ind. 301, it was said: "Where an intention to commit the injury exists, whether that intention be actual or constructive only, the wrongful act ceases to be a merely negligent injury, and becomes one of violence or aggression."

"As a matter of evidence, proof that the misconduct of the defendant was such as to evince an utter disregard of consequences, so as to imply a willing-

ness to inflict the injury complained of, may tend to establish willfulness upon the part of the defendant; but to authorize a recovery on such evidence, there must be suitable allegations in the complaint to which it was applicable."

In the case in hand there were such allegations and just such evidence.

"To constitute a willful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of." *Louisville, etc., R. W. Co.* v. *Bryan*, 107 Ind. 51.

In another case the following declarations of the law are made:

"It is our judgment that there may be a willful act, in a legal sense, without a formed and direct intention to kill or wound any particular person. There may, in other words, be a conclusive or implied intent without an express one. * * * The authorities, from the earliest years of the common law, recognize the rule that there may be a willful wrong without a direct design to do harm. * * * Or, to take another illustration, suppose an engineer sees two men on the track, and sees one of them making signals to the other to leave it, would it not be willfulness to run upon the man to whom the signals were made, without any effort to check the train? * * * We agree with appellant's counsel, that if two men are seen on a track in front of the train, and one of them risks his safety in the effort to signal the foremost man to leave the track, the engineer who sees the signal is guilty of a willful wrong if he does not use ordinary care to stop the train. Pushing on in utter disregard of such warning signals is something more than negligence; it is willfulness; it passes beyond a mere omission of duty,

and becomes a positive wrong." *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250.

"Recklessness, reaching in degree to an utter disregard of consequences, may supply the place of a specific intent." *Cincinnati, etc., R. R. Co.* v. *Cooper*, 120 Ind. 469.

"If appellant's servants knew that the decedent was unconscious of the impending danger in time to have avoided it, and, without regard to the consequences, made no effort to avoid it, such conduct would virtually imply a willingness or willfulness." *Pittsburg, etc., R. W. Co.* v. *Judd, Admr.*, 10 Ind. App. 213.

The principle involved has also been expressly approved in *Brannen* v. *Kokomo, etc., Grav. R. Co.*, 115 Ind. 115; *Indiana, etc., R. W. Co.* v. *Wheeler*, 115 Ind. 253; *Chicago, etc., R. W. Co.* v. *Nash*, 1 Ind. App. 298; *Overton* v. *Indiana, etc., R. W. Co.*, 1 Ind. App. 436; *Barr* v. *Chicago, etc., R. W. Co.*, 10 Ind. App. 433.

It is true, that the Supreme Court, in *Parker, Admr.*, v. *Pennsylvania Co.*, 134 Ind. 63, recently said: "No purpose or design can be said to exist where the injurious act results from negligence, and negligence cannot be of such degree as to become willfulness." Yet the propositions in *Louisville, etc., R. W. Co.* v. *Bryan, supra*, authorizing a constructive intent by implication, are quoted by the court with approval. It is very clear, therefore, that the court did not intend to question the correctness of the doctrine so often asserted by the same court, but was merely declaring a rule for negligence pure and simple.

In *Pennsylvania Co.* v. *Meyers, Admx.*, 136 Ind. 242, the question of willfulness was, by express concession of counsel, out of the case.

There are many decisions declaring that an engineer has the right, up to the last moment, to presume that an adult, walking upon the track apparently in pos-

session of his faculties, will give way to the train and leave the track, and that the engineer may act upon that presumption, and need not slacken his speed. *Pennsylvania Co.* v. *Judd, supra; Louisville, etc., R. W. Co.* v. *Cronbach, Admr.,* 12 Ind. App. 666.

Conceding this to be the general rule, it cannot be made so broad as to justify an engineer in proceeding at an unlawful rate of speed. *Citizens Street R. W. Co.* v. *Abright,* 14 Ind. App. 433; *Central, etc., R. W. Co.* v. *Smith* (Ga.), 34 Am. and Eng. Ry. Cas., 1.

Before he can justify his conduct in continuing his speed unchecked by any such presumption, he should himself be guilty of no wrong. He should have given proper and reasonable signals, and should himself be proceeding with due care.

In this case the engineer was running his train over a public street, by the side of which people lived and over which they traveled, at a rate of speed six times greater than was lawful. He saw the man on the track, where he had a right to be, walking with his back to the train; he kept his eye continually upon him, and saw that, although the bell was being rung and the whistle had twice sounded for street crossings, the man gave no heed, made no sign of realizing the near approach of the train. Since he knew the man had not seen the train, and since, by hearing alone, the man would not have been apprised of the rate of speed, we can fairly say that the engineer was apprised that the man had no knowledge of the high rate of speed at which the train was traveling, even if he heard it, and that he was possibly ignorant of its near proximity. Under such circumstances, the plainest principles of humanity, and the most ordinary regard for the life of a fellow-being, would require that the engineer should at least have brought his train down to a lawful and reasonable

rate of speed. No effort, however, was made to check the train until it was practically upon him; not even a danger signal was given until, according to the engineer's own statement, he was within forty feet of the man. In addition to all this, two men, within the plain range of the engineer's vision, were making signals to attract the unconscious walker's attention. The engineer does not deny that he saw these signals. The jury was therefore fully justified in finding that he did see them. To hold that one in charge of a railroad train was justified in such conduct upon the plea of rapid transit and the necessities of modern travel, would seem a most barbarous and heartless rule. Human life is more precious than the mere conveniences of the public. According to the engineer's testimony, as stated by appellant's counsel, he gave the danger signal when he saw the man was not going to get off. According to some of the evidence, the danger signal was given at the east end of the bridge, 350 feet away from where the man was struck, and yet no effort whatever was made to check the train until it was upon him.

The circumstances of this case differ widely from those in cases like *Louisville, etc., R. W. Co.* v. *Bryan, supra; Parker* v. *Pennsylvania Co., supra,* where the presence of the injured party was not known until too late to avoid him.

Appellee's decedent was not a trespasser, nor necessarily guilty of negligence, in walking along a railroad track laid in a public street. *Louisville, etc., R. W. Co.* v. *Phillips,* 112 Ind. 59; *Ohio, etc., R. R. Co.* v. *Walker,* 113 Ind. 196; *Pittsburg, etc., R. W. Co.* v. *Bennett, Admx.,* 9 Ind. App. 92; *Pennsylvania Co.* v. *Stegemeier, Admx.,* 118 Ind. 305.

We think it manifest that there is a different standard for gauging the conduct of appellant where it is

dealing with a mere trespasser, and where one is law-
fully upon the track. Of course, as said in the Judd
case, *supra*, if there is really a willful killing, then it
does not matter whether the deceased was a tres-
passer or not, the liability exists, but that does not
mean that when we are considering the rightfulness
of appellant's conduct such fact makes no difference.

We have given to the evidence in this case careful
consideration, and are well satisfied that it was such
as to authorize the jury to find that the conduct of the
engineer was so utterly reckless and wanting in re-
gard for deceased's safety, as to justify the finding of
a willful killing.

It is true, the engineer denies that he intended to
kill the man, or to run over him; but, while this may
be, the facts are sufficient to charge him with a con-
structive, if not an actual intent. It was within the
province of the jury to find that the circumstances
were such as to have apprised him of the decedent's
peril, and to have called upon him to check the high
rate of speed at which the train was running, but that
instead of so doing he pushed on, apparently deter-
mined, up to the last instant, that the decedent must
look out for himself.

Without any objection by appellant, and upon his
admission that it had been passed, a city ordinance, of
date of November, 1889, was given in evidence, for-
bidding the running of trains within the corporate
limits at more than four miles an hour. No evidence
was offered by either party as to the publication of
this ordinance. By the statute it would not be in
force without publication. R. S. 1894, section 3535.

As to whether or not the presumptions, under such
circumstances, are in favor of the validity and ef-
fectiveness of the ordinance, the authorities are some-
what at variance. In Illinois several cases hold that

the publication must be proved or the ordinance can not be received in the absence of a statute dispensing with such proof. *Trustees of Elizabethtown* v. *Lefler*, 23 Ill. 88; *Schott* v. *People*, 89 Ill. 195.

In some of the cases the question would seem, although not very clearly, to have arisen on the sufficiency of the evidence. *Raker* v. *Village of Maquon*, 9 Ill. App. 155; *Barnett* v. *Town of Newark*, 28 Ill. 62; *Hutchinson* v. *City*, 40 Ill. App. 19.

In *Town of Flora* v. *Lee*, 5 Ill. App. 629, it is directly decided that the admission of the ordinance without objection is sufficient to establish, *prima facie*, its validity.

The course of legislation and judicial construction, however, has been toward dispensing with proof of such publication, unless the fact is really controverted, or objection upon that ground seasonably made, especially where abundant time has elapsed in which the publication would, in due course, have been made.

In *Prell* v. *McDonald*, 7 Kan. 426, it is said: "We think it was unnecessary to go into the proof of all the preliminary steps in passing and publishing said ordinance. The book itself of the ordinances was *prima facie* evidence of the validity of the ordinance. If anything essential to its validity was omitted in passing or publishing it, it then devolved upon the plaintiff to show such invalidity."

In *City of Atchison* v. *King*, 9 Kan. 550 (556), the same court says: "It was the duty of the city authorities to publish the ordinance. As they acted on it, the presumption is that it was duly published; and, at least, this presumption is sufficient until the contrary appears."

In Iowa it is held that where the ordinance book is introduced without objection, it is to be considered as *prima facie* valid and in force. *State* v. *King*, 37

Ia. 462; *Larkin* v. *Cedar Rapids, etc., R. W. Co.,* 85 Ia. 492.

In our own State it has been decided that the ordinance is without force, where it appears that it was not published as required by law. *Loughridge* v. *City of Huntington,* 56 Ind. 253; *Meyer* v. *Fromm,* 108 Ind. 208.

Here, however, it does not appear that there was any want of publication.

In *State, ex rel.,* v. *Bailey,* 16 Ind. 46, the Supreme Court decided that it would presume that the Secretary of State had obeyed a resolution of the Legislature, requiring him to make a publication of a certain law, "because, by reasonable diligence, the secretary could have caused their legal distribution long before that time."

In *Wilhelm* v. *Scott,* 14 Ind. App. 275, this court recently held that we would presume that a constable, having taken up the stock running at large, had not failed to perform his duty by advertising, etc., as required by law.

In the decision of this case, we go no further than to hold that, under the facts here involved, the jury was justified in holding the ordinance in force.

This course will, in our opinion, as a rule, produce proper and just results; for, if there really be any controversy as to the publication, the party can, by objection to the introduction, call for the proof.

Several questions are discussed as to the court's action in refusing to give certain charges asked. The record does not show them to have been signed, nor does it appear that they were presented before the argument was begun. There was, consequently, no error in the court's refusal. *Buchart* v. *Ell,* 9 Ind. App. 353.

Were we, however, to consider the instructions as

Lake Erie and Western Railroad Co. *v.* Brafford, Administrator.

available, there would; in the view we have' taken of the law, be no material error in refusing them.

Instruction 8 1-2, when considered with reference to the facts of this case, and in connection with other instructions given, was not subject to the criticism made. Thus regarded, it was not in conflict with anything said in the Bryan case, *supra.*

By instruction 12, the jury was informed that decedent had a right to believe that appellant would obey the ordinance, and was not guilty of negligence in assuming, in the absence of any indication to the contrary, that appellant was obeying it. The instruction does not, however, tell the jury that he was, by reason of such belief, relieved from any care whatever upon his own part. There is a wide distinction between saying that one is negligent by believing and assuming such obedience, and declaring that the right to such belief and assumption relieves him from all duty of exercising care. That he has a right to so believe, is decided by *Madison, etc., R. R. Co.* v. *Taffe,* 37 Ind. 361; *Chicago, etc., R. R. Co.* v. *Boggs,* 101 Ind. 522; *Grand Rapids, etc., R. R. Co.* v. *Cox,* 8 Ind. App. 29; *Cleveland, etc., R. W. Co.* v. *Harrington,* 131 Ind. 426, which was expressly approved by the Supreme Court in *Miller* v. *Terre Haute, etc., R. W. Co.,* 144 Ind. 323.

Judgment affirmed.

Ross, J., absent.

Filed April 16, 1896.

### DISSENTING OPINION ON PETITION FOR REHEARING.

REINHARD, J.—Although I agreed with the original opinion in this case, I am persuaded, after a more careful examination of the question involved, that the jury were not authorized, from the evidence, to find that there was a willful killing. The engineer may have been grossly negligent in running the train at

such a high rate of speed, but proof of any intention on his part, either direct or constructive, to kill or run down the decedent, is wholly lacking, as I view the evidence.

For this reason I think a rehearing should be granted, and dissent from that portion of the principal opinion which holds that the evidence was sufficient to establish willfulness.

Filed June 19, 1896.