## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* ROGERS, ADMINISTRATRIX.

[No. 6,529.   Filed January 29, 1909.   Rehearing denied March 30, 1909.   Transfer denied January 28, 1910.]

1. PLEADING.—*Complaint.—Sufficiency at Common Law or by Statute.*—A complaint stating facts sufficient to show a cause of action at the common law or by statute is good on demurrer. p. 236.

2. PLEADING.—*Complaint.—Theory.*—A complaint stating facts sufficient to constitute a cause of action is good, although the pleader misconceived the law giving him his rights. p. 236.

3. MASTER AND SERVANT.—*Railroads.—Violation of Ordinance.—Fellow Servants.*—A complaint alleging that defendant railroad company negligently ran its train through a certain city in violation of a speed ordinance, thereby killing the plaintiff's decedent, who was a section hand, is not sufficient at the common law. p. 236.

4. MASTER AND SERVANT.—*Employers' Liability Act.—Complaint.*—A complaint founded upon section one of the employers' liability act (Acts 1893, p. 294, §1, §8017 Burns 1908) must affirmatively allege facts bringing the plaintiff within such act. p. 239.

5. PLEADING.—*Complaint.—Confusion.—Facts.—Inferences.*—Mere confusion in the statement of facts does not render a complaint bad on demurrer, and such alleged facts carry with them all necessary inferences. p. 239.

6. MASTER AND SERVANT.—*Employers' Liability Act.—Railroads.—Operating Trains.—Line of Duty.—Complaint.*—Since a railroad company can operate trains only by employing servants, an allegation that defendant railroad company negligently ran its train, killing plaintiff's decedent, imports that defendant's servant in charge of the engine and while in the line of his duty, ran such train. p. 239.

7. MASTER AND SERVANT.—*Railroads.—Failure to Ring Bell.—Complaint.*—An allegation that defendant railroad company negligently ran its train against plaintiff's decedent "without giving him warning of approach by sounding the whistle or ringing the

bell," does not show negligence, there being no averment that such company knew or should have known of the decedent's peril. p. 239.

8. MASTER AND SERVANT.—*Railroads.—Violation of Speed Ordinance.—Death.—Proximate Cause.—Complaint.*—A complaint alleging that defendant railroad company negligently ran its train through a city in violation of the speed ordinance thereby killing a section hand who was working on the track, sufficiently shows that the violation of the ordinance was the proximate cause of such killing. p. 240.

9. MASTER AND SERVANT.—*Railroads.—Violation of Ordinance.—Complaint.—Recitals.*—A complaint alleging that defendant railroad company negligently ran its train through a city at the rate of thirty miles per hour "contrary to and in violation of * * * an ordinance * * * of said city * * * which was on said date in full force and effect," sufficiently shows that such ordinance was in force at such time. p. 240.

10. MASTER AND SERVANT.—*Railroads.—Negativing Contributory Negligence.—Complaint.*—A complaint alleging that the decedent was struck by one of defendant's trains without negligence on his part, negatives contributory negligence. p. 241.

11. MASTER AND SERVANT.—*Assumption of Risk.—Negativing.—Complaint.*—A complaint by the representative of a servant killed by a railroad company must negative the servant's assumption of the risk causing his death. p. 241.

12. MASTER AND SERVANT.—*Assumption of Risk.—Engineers.—Negligence of.*—A section hand does not assume the risk of the negligence of an engineer in running an engine, section one of the employers' liability act (Acts 1893, p. 294, §1, §8017 Burns 1908) placing such burden upon the company. p. 241.

13. MASTER AND SERVANT.—*Employers' Liability Act.—Railroads.—Engineers.—Section Hands.—Violating Ordinance.—Complaint.*—A compliant alleging that defendant railroad company negligently ran its train in violation of a city ordinance, thereby killing one of its section hands, states a cause of action under section one of the employers' liability act (Acts 1893, p. 294, §1, §8017 Burns 1908). p. 242.

14. EVIDENCE.—*Inferences.—Regular Passenger-Train.—Railroads.—Master and Servant.*—Evidence that a regular passenger-train upon defendant's road killed the plaintiff's decedent justifies a jury in inferring that such train belonged to defendant, and that its employes were acting in the line of their duty. p. 242.

15. MASTER AND SERVANT.—*Railroads.—Violation of Ordinance.—Section Hands.—Contributory Negligence.—Question for Jury.*—Whether a section hand who was working on defendant railroad company's track within the corporate limits of a city was guilty

of contributory negligence in failing to see a train approaching at a rate of speed in violation of a city ordinance, and whether he would have been able to avoid injury if the speed of the train had been within the ordinance rate, are questions for the jury. p. 243.

16. EVIDENCE.—*Mortality Tables.—Expectancy.—Master and Servant.—*In an action by the personal representative of a deceased servant for the recovery of damages for such servant's death, tables of mortality are admissible in evidence to show the decedent's expectancy.   p. 244.

17. TRIAL.—*Reception of Evidence.—Objections.—Changing of, on Appeal.—*Where a party makes specific objections to the admission of evidence at the trial, he cannot present different reasons therefor on appeal.   p. 246.

18. EVIDENCE.—*City Ordinances.—How Proved.—*The introduction of the ordinance record of a city constitutes *prima facie* evidence of the validity of the ordinances therein contained, and unless their proper enactment is questioned no further proof is required. p. 246.

19. TRIAL.—*Instructions.—Correct but Incomplete.—*The giving of an instruction which is correct so far as it goes, but which purports to be, and is, incomplete, is not erroneous.   p. 247.

20. MASTER AND SERVANT.—*Burden of Proof.—Contributory Negligence.—*An instruction that the burden is upon the plaintiff to establish the defendant's negligence, and that under a general denial the defendant may prove the servant's contributory negligence, but that the burden of proving contributory negligence is upon the defendant, is correct.   p. 247.

21. MASTER AND SERVANT.—*Contributory Negligence.—Effect.—Instructions.—*An instruction that contributory negligence on the part of the servant will preclude a recovery by him though the master was guilty of negligence, is not erroneous.   p. 247.

22. MASTER AND SERVANT.—*Contributory Negligence.—Proof of.—Instructions.—*An instruction that the burden is upon the master to prove the servant's contributory negligence and that if the evidence introduced by the servant should show that, by the use of ordinary care, such servant could have avoided the injury, then the servant cannnot recover, is favorable to the master.   p. 248.

23. MASTER AND SERVANT.—*Railroads.—Violation of Ordinance.—Section Hands.—Injuries.—Instructions.—*An instruction that the ordinance admitted in evidence was in force at the time of decedent's injury, and that if defendant railroad company run its train in violation thereof, thereby killing the decedent who at the time was in the exercise of due care, such company would be liable, is correct.   p. 248.

24. MASTER AND SERVANT.—*Railroads.—Ordinances.- Obedience to.—Presumptions.—Contributory Negligence.—Questions for Jury.—*

*Instructions.*—An instruction that a section hand had a right to assume that defendant railroad company would obey the speed ordinance of the city wherein he was working and that whether the section hand should have looked and listened for an approaching train is a question for the jury, is correct. p. 248.

25. MASTER AND SERVANT.—*Railroads.*—*Section Hands.*—*Engineer's Assumption of Clear Track.*—*Instructions.*—An instruction that the engineer of a train alleged to have been run through a city in violation of an ordinance, thereby killing a section hand, had a right to assume that such hand would get off the track, is properly refused. p. 249.

26. MASTER AND SERVANT.—*Railroads.*—*Section Hands.*—*Contributory Negligence.*—*Instructions.*—An instruction that if the decedent section hand's view of the track was unobstructed and he failed to see the defendant's train, alleged to have been run at a speed in excess of the city ordinance, in time to get off the track, plaintiff cannot recover, is properly refused. p. 249.

27. MASTER AND SERVANT.—*Railroads.*—*Section Hands.*—*Contributory Negligence.*—*Question for Jury.*—Whether a section hand working upon a railroad track within a city was guilty of contributory negligence in failing to turn around from his work and see an approaching train running in excess of the ordinance rate is a question for the jury. p. 249.

28. APPEAL.—*Fair Trial.*—Where appellant has been given a fair trial and no prejudicial error was committed, the judgment will not be reversed. p. 249.

29. COURTS.—*Jurisdiction.*—*Constitutional Question.*—*Transfer.*—The Appellate Court has no jurisdiction over an appeal involving a constitutional question, and where the Supreme Court transfers to the Appellate Court an appeal involving a statute which has been upheld, it will be conclusively presumed that such question is not involved in the case. p. 250.

From Wabash Circuit Court; *A. H. Plummer,* Judge.

Action by Alvira Rogers, as administratrix of the estate of Luther Rogers, deceased, against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment on a verdict for plaintiff for $2,945, defendant appeals. *Affirmed.*

*G. E. Ross,* for appellant.

*Williams & Clawson, Todd & Rauch* and *H. N. Hipskind,* for appellee.

RABB, J.—The appellee's decedent was in appellant's serv-

ice as a section-hand, and was killed by being struck by one
of the appellant's passenger-trains, while he was engaged at
work on the road, in the line of his employment. The acci-
dent occurred within the corporate limits of the city of
Marion.

This action was brought by appellee, as administratrix of
the estate of the decedent, for damages resulting from his
death, which it is claimed was the result of the negligence of
appellant's servants in charge of its train.

Appellant's demurrer to the complaint for want of facts
was overruled; an answer filed; cause submitted to a jury
for trial, resulting in a verdict in favor of appellee. Appel-
lant's motions for a new trial, and in arrest of judgment,
were overruled, and judgment rendered on the verdict.

The errors assigned in this court call in question the ruling
of the court below on the demurrer to the complaint, and on
appellant's motions in arrest of judgment and for a new
trial.

The substantial averments of the complaint, after the for-
mal allegations with reference to the appointment of plain-
tiff as administratrix of the estate of the decedent, and the
business in which defendant was engaged, are that the plain-
tiff's decedent was an employe of the defendant, working as
a section-hand on defendant's track and road; that with
other employes of defendant, engaged in like service, he, on
August 6, 1904, was working on defendant's track between
Butler and Park avenues in the city of Marion, within the
corporate limits of the city; that while so engaged in the
performance of said work and labor, and while in the line
of his duty as such laborer, and while his attention was fixed
thereon and engrossed therein, and without any negligence
on his part, the defendant, by its servants and employes, who
were at the time engaged in the line of their duties, carelessly
and negligently ran and operated a certain fast passenger-
train on its said road, from east to west in said city of Ma-
rion, Grant county, Indiana, and within the city limits of

said city, and at the place where decedent was at the time engaged in his work, at a great and dangerous rate of speed, to wit, about thirty miles an hour, contrary to and in violation of section one of an ordinance passed and adopted by the common council of said city on June 3, 1891, and which was on said date in full force and effect, and which provided that any ''conductor, engineer, or other person having charge of or owning or operating any passenger-train, shall be and are hereby required to run such passenger-train into and within the corporate limits of said city at a rate of speed not to exceed six miles per hour.''

Plaintiff avers that, by reason of the violation of said ordinance, and the great rate of speed at which said train was running (at the place where said decedent was engaged at work) on said date, to wit, about thirty miles per hour, plaintiff's decedent was unable to get out of the reach of said train and locomotive; that had said defendant run and operated said train and locomotive engine in compliance with said ordinance, and at the rate of speed not exceeding six miles per hour, plaintiff's decedent could have retreated and escaped injury; that because his attention was so fixed upon his work, and engrossed therein, plaintiff's decedent did not see nor have any knowledge of the approach of said train and locomotive engine until said train and locomotive engine had advanced to such proximity that escape was impossible; that defendant and its employes in charge of said passenger-train and locomotive engine, and in operating them, carelessly and negligently ran said passenger-train and locomotive engine on the track where said decedent was at the time engaged in his work, and did not give said decedent any notice or warning of their approach, either by sounding the whistle or ringing the bell on said locomotive engine, until said locomotive engine was within fifteen feet of plaintiff's decedent, but that said defendant's servants and agents operating said train, so carelessly and negligently ran it upon and against plaintiff's decedent, and defendant's said locomotive

engine struck said plaintiff's decedent with great force and violence, thereby mortally injuring him.

Appellant contends that it is the theory of appellee's case that her complaint is founded upon a common-law liability, and appellant proceeds to argue at length, and to cite a vast array of authorities, to sustain the proposition that a common-law liability is not stated in the complaint, and that as the complaint is not good upon the theory upon which it is predicated appellant's demurrer should have been sustained.

A complaint which states facts enough to authorize a recovery in favor of a plaintiff under the law, whether statutory or common law, is sufficient to withstand a demurrer. It is true the complaint must proceed upon some definite theory; but the phrase "theory of the case" does not mean what may have been in the mind of the pleader as to the source of his legal rights, but means the basis upon which the pleading proceeds, the facts upon which a right of action is claimed to exist in favor of the party asserting them. If the facts stated in the pleading, and upon which the plaintiff predicates a right to recover, are sufficient to authorize such recovery, either at the common law or by virtue of the provisions of some statute, his complaint will withstand a demurrer, although the pleader himself may have misconceived the law awarding him the right.

In this case it is manifest that no cause of action is stated in the appellee's complaint at common law. It is not insisted by appellee that the complaint states a common-law action in her favor; but it is contended that the facts stated in the complaint show a right of recovery in her favor under and by virtue of the provisions of §8017 Burns 1908, Acts 1893, p. 294, §1, providing that "every railroad, * * * operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases:

* * * Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any * * * locomotive engine or train upon a railway.''

Appellant insists that the complaint is insufficient to make a case under this statute, for the following reasons: (1) That the averments of the complaint fail to show that the negligence charged was the proximate cause of the injury to appellee's decedent; (2) that the negligence charged is not shown by direct averment to have been the negligence of a servant engaged in the line of his duties, who was at the time ''in charge of'' appellant's locomotive or train of cars; (3) that the complaint fails affirmatively to show that the risk of the injury the decedent received was not one of the assumed risks of the service; (4) that it fails to show that the decedent might not, by the exercise of his senses, have known of the approach of the train that struck him, in time to avoid the injury; (5) that, so far as the complaint is founded upon negligence in running the train in violation of the speed ordinance, it is not shown by direct averment that there was any such ordinance in force at the time; (6) that the attempted charge of negligence on the part of the engineer, in failing to sound his whistle or ring the bell on approaching the decedent, is insufficient, for the reason that it is not shown by the averments of the complaint that the engineer knew of the situation of the decedent, or could have known it by the exercise of due care; (7) that the facts stated fail to show a duty owing by the appellant to the decedent, and affirmatively show contributory negligence on the part of the decedent.

The complaint is far from being a model in clearness of expression, but it does affirmatively and by direct averments show that the appellee's decedent was a section laborer in the employ of the appellant; that appellant's passenger-train was run within the corporate limits of the city of Marion by its servants, while in the line of their employ-

ment, at the rate of thirty miles an hour, and that while it was so being run within the corporate limits of said city, and without any negligence upon the part of the decedent, and while he was engaged in the line of his duty under his employment, at work upon appellant's track at a point within said city, with his attention fixed upon his work, said train struck and killed him; that, by reason of the great rate of speed at which the train was being run, the decedent was unable to get out of reach thereof, and that had the train been run at a speed not exceeding six miles an hour the decedent could have retreated and escaped injury; that the decedent did not see nor have knowledge of the engine until it had advanced to such proximity that escape was impossible; that the employes in charge of said train and locomotive engine, and in operating them, did not give the decedent any notice or warning of their approach by sounding the whistle or ringing the bell, until the engine was within fifteen feet of the plaintiff's decedent, "but that said defendant's servants and agents operating said train, so carelessly and negligently ran it upon and against decedent that the locomotive engine struck the plaintiff's decedent, thereby mortally injuring him."

With reference to the city ordinance, the complaint avers that appellant's train was run through the city at the rate of about thirty miles an hour, "contrary to and in violation of section one of an ordinance passed and adopted by the common council of said city on June 3, 1891, and which was on said date in full force and effect, and which provided that 'any conductor, engineer or other person having charge of or owning or operating any passenger-train, shall be and are hereby required to run such passenger-train into and within the corporate limits of said city at a rate of speed not to exceed six miles per hour.'"

It is necessary, in making out a case against a railroad company under the employers' liability act for the negli-

gence of a person in charge of a locomotive engine or train of cars, that it shall appear from the averments of the complaint that the case is within the statute, and that the negligence complained of as having produced the injury was the negligence of a servant of the company, who, in the line of his employment, had charge of a locomotive or train of cars.

There is some confusion in the averments of this complaint upon that score, and they might have been made more clear, definite and certain, and it is inexcusable upon the part of those who draft pleadings that there should be obscurity in reference to averments of this character. But mere confusion of statement is not a sufficient ground of demurrer. Pleadings are to be liberally construed. Necessary facts are to be directly averred. But the facts averred in a complaint carry with them all necessary inferences.

The appellant in this case is a corporation. It acts only by its servants. It could run a locomotive and train of cars only by the hand of its servants. The servant operating one of its engines would necessarily be a person in charge of the engine, within the meaning of the law in question, and the averment in the complaint that the "defendant, by its servants, ran its train," etc., means precisely the same thing as the averment that the servant of the defendant, in charge of its train and engine, did the same things that it is averred in the complaint the defendant did through its servants. These averments in the complaint carry the necessary inference that the train which struck appellee's decedent was in charge of the appellant's servants, and it is directly averred in the complaint that the "defendant's employe in charge of its passenger-train and locomotive engine, carelessly and negligently ran them against the plaintiff's decedent, without giving him warning of approach by sounding the whistle or ringing the bell," which, we agree with

appellant, are not sufficient to show negligence on the part of such employes in so failing to sound the whistle, for the reason that it is not shown by any proper averment in the complaint that such persons in charge of the locomotive engine and train either knew of the decedent's peril, or, by the exercise of ordinary care, could have known of his situation; yet they show clearly that it was the negligence of the servant in charge of appellant's locomotive engine and train of cars upon which appellee was predicating her right of action, and in this respect the averments of the complaint were sufficient to make out appellee's case under the statute.

The negligent act of the servant relied upon in the complaint is that of running the engine and train of cars in violation of the speed ordinance of the city of Marion.

8. This ordinance required that those in charge of passenger-trains should not run them through the corporate limits of the city of Marion at a speed exceeding six miles an hour. The complaint avers that appellant's servants were running the train, which struck and killed appellee's decedent, at the rate of thirty miles an hour, and that it was on account of the high rate of speed at which the train was running that the decedent was prevented from escaping from the track; that had the train been run at the rate of six miles an hour he would have been able to get out of its reach. We think that these allegations show that the negligence charged was the proximate cause of the injury.

It is contended that it does not appear by direct averment that there was a speed ordinance, limiting the rate of speed at which trains might run through the city of Marion, 9. in force at the time the accident occurred; that what does appear in the complaint on that subject is merely by way of recital. We cannot agree with this contention. It is true that, after the averments in the complaint regarding the rate of speed at which the train was running, the

words, "contrary to and in violation of section one of an ordinance passed and adopted by the common council of said city on June 3, 1891," do appear in the complaint as a recital, but this recital is immediately and in the same connection followed by the direct averment that the recited ordinance was in force and effect at the time, and the ordinance is set out; and we think it thus sufficiently appears by direct averment that the speed ordinance was in force at the time of the accident.

There is also the direct averment in the complaint that the decedent was struck by one of appellant's trains, without negligence on his part. It is thus sufficiently shown that the decedent's negligence did not proximately contribute to his injury.

Appellant, with apparent earnestness, insists that the complaint is insufficient for failing affirmatively to show that the decedent's injury and death did not result from an assumed risk of his employment, and that in actions of this character this fact must appear from the averments of the complaint. We agree with appellant that this fact must affirmatively appear from the averments of the complaint, but we do not agree that the complaint fails to show this fact.

Prior to the enactment of the employers' liability act, section-men working upon railroad tracks, and other employes of railroad companies working around their tracks, assumed, as a part of the risks of their employment, the dangers and risks that would arise from the negligence of engineers and others in charge of running trains; but the employers' liability act relieved such employes of these assumed risks, and placed the burden of them upon the employer, and the facts stated in the complaint show that the injury the decedent received was not from one of the assumed risks of his employment, but from a risk which the statute thus transferred from the employe to the

employer. The facts stated also show the duty the appellant owed to the decedent. It shows that the decedent was appellant's servant, engaged, at the time he was killed, in the duties of his employment, and the employers' liability act, having imposed upon the company all the duties and obligations which those in charge of its engines and trains would owe to their coëmployes working on and around appellant's tracks, and imputing to the company the negligence of such servants in charge of such locomotive and train, the complaint sufficiently shows a duty owing to the decedent by the appellant, and the breach of that duty resulting in the servant's death. The running of the train in violation of the speed ordinance of the city was an act of negligence, and of this speed ordinance the servants of appellant were entitled to the benefit. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, and cases cited.

We think the complaint sufficient to withstand a demurrer, and no error intervened in overruling the demurrer thereto.

The appellant's reasons for a new trial, urged here for reversal, are, that the evidence is not sufficient to sustain the verdict, and that the court erred in the admission of certain evidence and in giving and refusing to give certain instructions.

It is first claimed that the evidence fails to show that appellant's employes had charge of the locomotive that struck the decedent. The evidence shows that the train that struck and killed appellee's decedent was a regular passenger-train on appellant's road. From this circumstance the jury was justified in inferring that such train was in charge of the servants of the appellant, and that in running and operating it they were engaged in the performance of the duties of their employment. These facts do not have to be made out by direct testimony, nor proved beyond a reasonable doubt. Any reasonable man would infer that a passenger-train running over a partic-

ular railroad belonged to the company owning the road, and that the men engaged in operating the train were the servants of the company, and that they were, in operating the train, engaged in the line of the duties of their employment.

Appellant earnestly insists that the evidence fails to warrant the conclusion that the accident would not have happened precisely as it did had the train been running at the rate of six miles an hour, and did not show that it was by reason of the rate of speed at which the train was running that the accident happened. The evidence warranted the assumption that if the train had been running at six miles an hour instead of thirty the decedent would have escaped injury. Because the train was running at the rate of thirty miles an hour, the decedent had less than a half second's time to escape from the track after, as averred in the complaint and shown by the evidence, he became aware of the approach of the train. If it had been running at the rate of six miles an hour he would have had five times that length of time to escape after the warning whistle was sounded, and he knew the train was upon him. The jury were fully warranted in finding that he could not escape the injury in the one case, and that he could have escaped it in the other. And whether the decedent was guilty of negligence in failing to see or hear the train in time to escape, under the facts disclosed, was properly a question for the jury. While it is true that it is the duty of those who work along a railroad track to exercise reasonable vigilance to avoid injury from passing trains, yet they are not required to keep a constant watch for passing trains, nor are they negligent if they fail to see one that, by turning their attention from their work, they might see and avoid. The same rule does not apply to trackmen working upon railroads that applies to travelers upon a public highway. The laborer upon the track is required and expected to devote his time and attention to the duties of his employ-

ment, and it is only such vigilance as he can reasonably exercise in connection with the performance of his work that is required of him to exonerate him from the charge of negligence.

In this case the evidence discloses that the train that struck and killed the decedent might have been seen, by one whose eyes were turned in its direction, for the distance of one-half mile from the place where the accident occurred. The train would cover this distance, at the rate at which it was running, in one minute. The decedent's work was filling in the track and dressing it down. His face and attention were turned in the opposite direction from which the train was coming. He could not see in both directions at the same time, and we cannot say, as a matter of law, that due care required that he should turn from his work every half-minute to see if a train was coming from the opposite direction.

One of the reasons set forth in appellant's motion for a new trial was the admission in evidence of life tables showing the decedent's expectancy of life at the time of his death. This evidence was competent. *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 562; *Clark County Cement Co.* v. *Wright* (1897), 16 Ind. App. 630; *Shover* v. *Myrick* (1892), 4 Ind. App. 7; *Smiser* v. *State, ex rel.* (1897), 17 Ind. App. 519; *Crosby* v. *Pierce* (1900), 25 Ind. App. 108.

Appellant insists that reversible error intervened in the court's admitting in evidence, over its objection, the speed ordinance of the city of Marion. The record discloses that the appellee offered in evidence the ordinance record of the city of Marion, containing the first section of the ordinance in question. This was objected to, on the ground that "if any part of the ordinance goes in evidence the entire ordinance should go in; that the ordinance itself is shown to be penal and cannot be made a basis of a civil action; that it is not properly authenticated, and that it does not tend to prove any issue in this case; that the defendant company is

not answerable for its violation to one of its employes by another employe in its service; that the violation by one employe cannot be made the basis of an action for damages to another."

This objection was overruled, and the first section admitted in evidence. Subsequently the record of the entire ordinance was offered in evidence, to which appellant objected, on the ground "that it is not properly authenticated; that it does not tend to prove any issue in the cause; that it is not binding upon the defendant with reference to its own employes, and has no application to the operation of its trains with reference to its own employes; that it is penal in its character, and provides for a penalty for its violation, and cannot be made the basis of a civil action, especially to hold the defendant company liable for the acts of one of its servants in violating the ordinance resulting in injury to another." This objection was overruled, and the record read in evidence.

It is now in this court insisted that the evidence was incompetent, for the reason that it was not shown that the ordinance had been published, as required in its provisions.

Section 8654 Burns 1908, Acts 1905, p. 219, §52, which was in force at the time the accident occurred, provides that every city ordinance, imposing a penalty or forfeiture for the violation thereof, shall, before the same shall take effect, be published once each week for two consecutive weeks in a newspaper of general circulation printed in such city. This section further provides that all ordinances shall, within a reasonable time after their approval by the mayor, be recorded in a book kept for that purpose by the city clerk, which shall include the signature of the presiding officer and be attested by the clerk, and such record or a certified copy thereof "shall be presumptive evidence of the passage and going into effect of such ordinance."

There are two grounds upon which we think the ruling of the court below may properly be sustained: (1) Where ten-

dered evidence is objected to, the objecting party must point out the specific objections to the offered evidence, and if the evidence be admitted it will be considered as admitted without objection, except as to the matters specifically pointed out to the court by the objecting party. In this case, it was not objected in the court below that the evidence offered was not properly admissible because it was not shown that the ordinance had been published, and, so far as that particular objection is concerned, the question will be treated in this court as though the ordinance was admitted without objection. The objections that were pointed out in the court below were not well taken.

(2) In the case of *Lake Erie, etc., R. Co.* v. *Brafford* (1896), 15 Ind. App. 655, 666, this court quotes with approval from the decision of the supreme court of Kansas in the case of *Prell* v. *McDonald* (1871), 7 Kan. 426, 12 Am. Rep. 423: "We think it was unnecessary to go into the proof of all the preliminary steps in passing and publishing said ordinance. The book itself of the ordinances was *prima facie* evidence of the validity of the ordinance. If anything essential to its validity was omitted in passing or publishing it, it then devolved upon the plaintiff to show such invalidity." This further quotation is made in the same case from the case of *City of Atchison* v. *King* (1872), 9 Kan. 550: "It was the duty of the city authorities to publish the ordinance. As they acted on it, the presumption is that it was duly published; and, at least, this presumption is sufficient until the contrary appears." Iowa authorities are quoted in the same case, that hold that where the ordinance book is introduced without objection, it is to be considered as *prima facie* valid and in force. *State* v. *King* (1873), 37 Iowa 462: *Larkin* v. *Burlington, etc., R. Co.* (1892), 85 Iowa 492, 52 N. W. 480.

The case of *Lake Erie, etc., R. Co.* v. *Brafford, supra,* holds that where the evidence is silent as to whether there was due

publication of a city ordinance that has been duly passed, the presumptions are in favor of the validity and effectiveness of the ordinance.

Here the record presents the question precisely the same as though no objection to the validity of the ordinance had been made in the court below, and the question is practically the same here that was presented to this court in the case cited. For that reason the objection was properly overruled. Under the statute quoted the ordinance record furnished presumptive evidence of the due publication of the ordinance, and cast upon appellant the burden of showing that the ordinance, thus appearing duly of record, was invalid.

It is insisted that the court erred in giving instructions four, five, six, ten and eleven, on its own motion, and four and five asked for by appellee, and in refusing to give instructions four, seven and nine, tendered by appellant.

Instruction four, given by the court on its own motion, was a simple and correct definition of what is meant by the phrase "preponderance of evidence." Instruction five is an incomplete statement of the charge of negligence made by the appellee in her complaint, correct as far as it went, but in which the court did not undertake to state the issues, and was not in any respect erroneous.

Instruction six tells the jury that by the answer of denial the burden is placed on the plaintiff of establishing negligence on the part of the defendant, and that under this issue the defendant may prove contributory negligence on the part of the decedent, but that the burden of proving contributory negligence is on defendant. This instruction was absolutely correct and fair to both parties.

Instruction seven informed the jury that even though the evidence established every material allegation of the complaint, the plaintiff could not recover if the evidence disclosed contributory negligence on the part of the decedent, and is subject to no just criticism, especially from the appellant.

Instruction ten correctly informed the jury that while the burden of proof is on the defendant to show the decedent guilty of contributory negligence, it is not required to be done by its own evidence, and that if the evidence introduced by the plaintiff should show that the decedent might, by the use of ordinary care and diligence, have avoided the injury, then in such case he was guilty of contributory negligence, which would·prevent a recovery. It is difficult to conceive, and we are unable to understand, that this instruction could be otherwise than beneficial to the appellant.

Instruction eleven told the jury that the ordinance in question was in force at the time the accident happened, and that if the appellant was at the time running its train at a greater rate of speed than the ordinance allowed it was guilty of negligence, and if it thereby caused the death of appellee's decedent, and he at the time was exercising ordinary care, the company would be liable.

The ordinance having been duly passed, duly signed and attested, and duly recorded in the ordinance record, and there having been no evidence impeaching its validity, it was to be presumed, as a matter of law, that it was in force, and the court was justified in so instructing the jury.

Instruction four, asked for by appellee, informed the jury that appellee's decedent had the right to assume that the appellant in the movement of its trains would be controlled by the ordinance, and that whether decedent's failure to look and listen for approaching trains under the circumstances was negligence on his part, was for the jury to determine. We think no error intervened in giving this instruction.

Instruction five, given at the request of appellee, was the same in substance as instruction eleven, given by the court on its own motion.

Instruction four, asked for by appellant and refused by the court, was to the effect that appellant's servants, in

charge of the locomotive and train, had a right to assume that the decedent would get off the track. This instruction was properly refused. In this case it was not a question of what those in charge of appellant's train might or might not assume regarding the action of the decedent. The act they are charged with having done negligently was running the train in violation of the speed ordinance, and their opinion as to what the decedent would or would not do, with reference to getting out of the way of the train, would not afford an excuse for the negligence charged.

Instruction seven, refused by the court, was as follows: "If you find from a preponderance of the evidence that the view was unobstructed, so that the decedent could have seen the train that struck him in time to avoid being struck and injured, and that he failed to look out for his safety, then I charge you that plaintiff cannot recover in this action." This instruction was properly refused. The evidence clearly showed that the unfortunate victim of the accident did not have "a view" of the train that struck him until it was upon him, and the instant he was struck. Whether it was his duty to divert his eyes and attention from his work, and turn around and look in the opposite direction every half minute, to observe whether a train was coming, we think was properly submitted by the court to the jury.

Instruction nine, asked for by appellant and refused, informed the jury that inasmuch as there was no proof of the publication of the notice of the ordinance, the ordinance was therefore not in force. This, as we have already indicated, was properly refused.

The issues in this case were fairly and clearly presented to the jury by clear and explicit instructions of the able judge who presided at the trial. We think no error prejudicial to the appellant has intervened in the trial of this case.

Appellant presents an argument against the constitutionality of the employers' liability act, involved in this case. This court has no jurisdiction to pass upon the question so discussed. The constitutionality of the law has been upheld by the Supreme Court in the cases of *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, and this case having been transferred from the Supreme Court to this court (*Pittsburgh, etc., R. Co.* v. *Rogers* [1907], 168 Ind. 483) it is conclusively presumed that the question discussed is not involved in this case.

Judgment affirmed.