RACHEL C. LARKIN, Appellee, v. BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

1. **Evidence:** CITY ORDINANCES: PROOF. Section 492 of the Code provides that all city ordinances "shall, as soon as may be after their passage, be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer of the council and the clerk," and that such "ordinances shall take effect and be in force at the expiration of five days after they have been published." *Held*, in an action for damages against a railway company based upon the violation of a city ordinance, that the record provided by the above statute was not sufficient proof of the ordinance relied upon, when objected to by the defendant, but that the burden was upon the plaintiff to show the publication of the ordinance as required by law.

2. **City Ordinances:** AMENDMENT. Under section 489 of the Code, providing that "no ordinance or section thereof shall be revised or amended, unless the new ordinance contain the entire ordinance or section reviewed or amended, and the ordinance or section so amended shall be repealed," an amendment which adds nothing to, nor takes anything from, any section of an ordinance, but contains in full the section as it is designed to be when amended, is a sufficient compliance with the statute.

3. **Railroads:** SPEED REGULATED BY CITY ORDINANCE: REASONABLENESS. While crossing the defendant's right of way in a carriage at a point about three-quarters of a mile north of its station in the town of W., the plaintiff was struck by an engine running south at a high rate of speed towards the station, and injured. The traveled portion of the highway at such crossing was within the corporate limits of said town, and from that point the defendant's road extended southward parallel to, and within about twenty rods of, a street of the town on the east. On the west side of its road the land was used for agricultural purposes. The evidence did not show how far south from the crossing the defendant's right of way was fenced, nor the amount of travel there was upon the street to the east of it. *Held,* that, under the above circumstances, an ordinance of said town prohibiting any locomotive attached to a passenger train, using airbrakes, from running within the limits of the corporation at a rate of speed greater than ten miles an hour, was not unreasonable.

4. **Negligence:** CONTRIBUTORY NEGLIGENCE OF SERVANT. At the time of the accident in question the plaintiff was riding in a carriage which she had hired, with a driver, of a liveryman, to take her to her destination. There was a conflict in the evidence as to whose direction and control the driver was under. *Held,* that the court properly instructed the jury that, if the driver was guilty of negligence which contributed to the injuries in question, such negligence would prevent a recovery by the plaintiff only in case the driver was under her control, or in case she had the right to control and direct him.

*Appeal from   Cedar   District   Court.*—HON. JAMES D. GIFFEN, Judge.

MONDAY MAY 23, 1892.

ACTION to recover damages for personal injuries alleged to have been caused by negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Wheeler & Moffit* and *S. K. Tracy*, for appellant.

The ordinance was not shown to have been published in a newspaper, nor in book or pamphlet form. The evidence discloses that it was not so printed, and was read to the jury from the original manuscript, as kept by the clerk of the town. So no presumption of publication can be indulged, such as would be if it had been published in a book or pamphlet. The ordinance is one of a general and permanent nature, and therefore it is essential to its validity that it be shown to have been published in a newspaper or in pamphlet form in order to be competent as evidence; and it was incompetent as such until one of those facts was established. Code, sections 661, 669, 672. Implications will not be permitted to overturn these express provisions, nor will presumptions as to performance of duty by the officers of a town, obtain to override such statutes. By the pleadings, the defendant expressly denied that these statutes had been legally adopted, as the law requires. Where the statute expresses when the presumption will be indulged as to a fact, we insist that such expression excludes other presumptions of that fact. So that if the statute presumes a publication in a newspaper, from the fact of its being printed in pamphlet, then the existence of the pamphlet must be shown to justify the presumption of publication, without other evidence. Hence the burden was on the plaintiff to show one of these facts. The pivotal question in the case is whether the negligence of the boy driver, if any, was imputable to the occupants of the buggy. Whether the negligence of the driver is imputable to the plaintiff depends on his or her right to direct, order or control the driver, or whether the parties are engaged in a common enterprise; both of which relations we contend existed under the facts of this case. *Nisbet v. Garner*, 75 Iowa, 314. The plaintiff under this con-

tract of hiring was not obliged to remain a passive
passenger such as exists where one is seated in charge of
a public carrier in an omnibus, hack or car. The
driver under the circumstances at bar is to be consid-
ered as much the servant of the plaintiff in doing this
driving for her as if he had been employed by her to
do any other kind of work which she could direct him
.in. His negligence therefore in doing her work was
imputable to the plaintiff, and if he negligently drove
in front of this approaching train, then such act of
carelessness must be ascribed to her, and she ought
not recover. *Brickall v. N. Y. Cent. & H. R. R. Co.*,
24 Northeastern Rep. 449.

*R. G. Cousins* and *Chas. A. Clark*, for appellee.

The ordinance in question was read in evidence from
the original ordinance book of West Liberty. Section
492 of the Code provides that, ''It shall be deemed a
sufficient defense to show that no such publication was
made.'' The statute thus, in as plain terms as possi-
ble, makes the ordinance itself presumptive evidence of
its publication, and throws upon the defendant the
burden of showing no publication has been made, if
that is relied upon to establish the invalidity of the
ordinance. This is in accordance with familiar rules
of law which obtain in the absence of any such statu-
tory provision. The law requires ordinances to be
published, and the presumption is that all public
officers discharge their duties. *City of Louisville v.
Hyatt*, 1 B. Mon. 180; *Mussey v. White*, 3 Me. 200;
*State v. Young*, 2 N. H, 310; *Goff v. Lamb*, 12 Me.
312; *Inhabitants v. Root*, 18 Pickering, 138; *Cobley v.
Young*, 15 N. H. 493; *Schermerhorn v. Talman*, 14
N. Y. 93; *Jackson v. Sheffer*, 11 Johnson, 317; *Hart-
well v. Root*, 19 John. 343; *King v. Queston*, 4 Ad. &
Ell. 667; *Freeholders v. State*, 24 New Jersey Law, 718;
*Aiken v. Iron Works*, 43 Georgia, 464. This court has

decided the precise question under consideration, in a case where an ordinance was given in evidence in a criminal prosecution, as found in the ordinance book of a town, without proof of publication. *State v. King*, 37 Iowa, 469. It is true that in that case no objection was made, when the ordinance was offered, to the effect that publication was not shown. But the rule that objections not raised in the court below will not be considered in the supreme court, does not apply in criminal cases. *State v. Lundermilk*, 50 Iowa, 795; *State v. Barlow*, 50 Iowa, 701; *State v. Potter*, 28 Iowa, 554. In a subsequent case this court said: "The ordinance being found in the proper record of the town in its form as published, it was at least *prima facie* admissible." *Eldora v. Burlingame*, 62 Iowa, 35. That such presumption is fully authorized even where not required by statute as in this case, see, *Bank v. Dandridge*, 12 Wheaton, 64. In a subsequent case this court held that a newspaper, in which it was claimed that an ordinance had been published, "will be presumed to be a newspaper of general circulation for the reason that the presumption obtains that officers perform the duties with which they are charged." *Incorporated Town of Bayard v. Baker*, 76 Iowa, 220. It is difficult to see how the question of the alleged negligence of the driver being imputable to the plaintiff, cuts much figure in the case. The whole doctrine of imputable negligence rests upon the case of *Thorogood v. Bryan*, 8 C. B. 114. That case never obtained any foothold in America. Nearly all American courts of the last resort have repudiated this doctrine and refused to follow it. *Little v. Hacket*, 116 U. S. 366; *Dean v. Railway Co.*, 129 Pa. St. 514; *Transfer Co. v. Kelly*, 36 Ohio, 86; *Masterton v. Railway Co.*, 84 N. Y. 247; *Dyer v. Railway Co.*, 71 N. Y. 228; *Beck v. Railway Co.*, 13 S. W. Rep. 1055; *Tollman v Mankato* (Minn.), 29 N. W. Rep. 317; *Bennett v. Railway Co.*, 36 New Jersey Law, 225;

*Louisville v. Railway Co.*, 9 Bush (Ky.), 728; *Holzab v. Railway Co.*, 38 La. Ann. 185. Scores of other American cases might be cited in hostility to *Thorogood v. Bryan*, but this court itself has repudiated the doctrine of that case, and has declared emphatically, "We think the doctrine is contrary to sound reason and well-settled legal principles." *Nesbit v. Town of Garner*, 75 Iowa, 319. *Thorogood v. Bryan*, was not decided by an English court of appeals. Recently, in 1887, that case came before a court of appeals for the first time, and the doctrine was then squarely overruled in England, where it originated. *The Bernina*, 12 Probate Div. 58. The cases above cited do not hold or intimate that there is any difference between a driver of a public hack and the driver of a livery team which is let for hire precisely as the public hack is. In principle there can be no difference. The private carrier is liable for want of reasonable skill and care. *The Margaret*, 94 U. S. 497, and cases there cited. If the negligence of this private carrier combined with the negligence of the defendant, and produced the injury complained of, either one is liable to respond to the plaintiff in damages, and neither can shield himself or itself, because the other might be called upon to respond. To maintain the contrary rule would be to hold that one or both of two wrong-doers, who had inflicted an injury by their negligence upon an innocent party, and both of whom were liable, might escape by laying the blame upon each other, leaving the innocent party to fall between the two. Such is not the law. A recent case decides this exact question. *Railway Co. v. Steinbrenner*, 47 N. J. Law, 161. The law is also settled in the English courts that the hiring of horses, to be driven by a driver regularly in the employ of the person from whom the horses are hired, does not create the relation of master and servant between the

hirer and driver. . *Quarman v. Burnett,* 6 N. & W. 499;
*Lawgher v. Pointer,* 5 B. & C. 547; *Jones v. Liverpool,*
14 Ob., 890. And this same rule is maintained as to
the driver of a private carriage for hire in *Michigan
City v. Boecking,* 122 Ind. 39; *Town of Albion v. Het-
rick,* 90 Ind. 545; *Railway Co. v. Spencer,* 98 Ind. 186;
*Town of Knightstown v. Musgrove,* 116 Ind. 122. The
true rule is that, "The only case where the so-called
doctrine of identification or imputation can be applied,
is where the passenger actually participates in the car-
rier's fault, as by urging him on, or by plainly mani-
festing approval of his course, and thus encouraging
him. *Bigelow's Leading Cases,* 726, 729. This court
has further repudiated the doctrine of *Thorogood v.
Bryan,* in holding the negligence of a parent will not
be imputed to a child under the parent's immediate con-
trol and supervision. *Wymore v. Mohaska,* 78 Iowa,
396. This leaves the doctrine of imputable negligence
in this state confined. *First.* To a case where three
persons were engaged in a joint enterprise. That is,
where the three hired a team without a driver and did
their own driving. *Second.* To a case of a wife
injured through the negligence of her husband, while
under his immediate supervision and control. *Nesbit
v. Garner,* 75 Iowa, 318.

ROBINSON, C. J.—In October, 1888, the plaintiff
engaged, at a livery stable in West Liberty, a team and
driver to take herself and sister from that place to the
home of their brother, several miles in the country.
The driver furnished was a boy sixteen years of age,
and the vehicle was a carriage which contained but one
seat. That was occupied by the two sisters and the
driver, the plaintiff sitting on the left side. Elm street
extends northward, from the vicinity of the depot in
West Liberty, parallel to and about twenty rods east of
the railway of the defendant, a distance of three-fourths

of a mile, to a public highway known as the "Musca-
tine and Iowa City Road," which extends across the
railway track from east to west. A cut-off, leaving
Elm street some fifteen to twenty rods south of the
highway, leads into it at a point about one hundred and
fifty feet east of the track. A person traveling north-
ward on Elm street can see the railway track south of
the highway, but the view north of it is so obstructed
by trees, shrubbery, and embankments that the track
is hidden. At a point three hundred and sixty-nine
feet north of the point where the highway crosses the
railway the latter is in a cut thirteen feet and nine
inches deep. From that point the surface of the ground
slopes southward to the crossing. When half way from
the cut-off to the crossing the traveler on the highway
could see a train only a few rods north of the crossing.
At the time in question the carriage in which the plain-
tiff was riding was driven northward on Elm street, and
westward on the Muscatine road, to the crossing.
There it was struck by a train of the defendant mov-
ing southward. The plaintiff was seriously injured and
her sister and the driver were killed. The plaintiff
charges that the train approached the crossing through
the cut at a dangerous and reckless rate of speed, with-
out the blowing of a whistle or the ringing of a bell;
that the rate of speed was in violation of an ordinance
of the town of West Liberty; and that in so operating
it the defendant was negligent.

    I. At the time of the accident the town of West
Liberty was incorporated, and the north boundary line
of its corporate limits was the center of the

1. EVIDENCE:
city ordi-
nances: proof.

highway where the accident occurred. At
that place the traveled part of the road
was south of its center. The train which caused the
accident was running from twenty-five to thirty miles
an hour at the time, and was supplied with the latest
and best known air brakes, which were in good order.

The plaintiff was permitted to introduce in evidence so much of the ordinance book of the town of West Liberty as showed ordinance numbered thirty-two and an amendment thereto. They provided that no locomotive attached to a passenger train using air brakes should be allowed to run, within the limits of the corporation, at a rate of speed greater than ten miles an hour. The defendant insists that it was not shown that the ordinance had been adopted and published as required by law, and that it was unreasonable. Section 1, chapter 128 of Acts of the Nineteenth General Assembly, provides that a book or pamphlet containing the ordinances of a city or town organized under the general incorporation laws of the state, published by said city or town, shall be received as evidence of the passage and legal publication of such ordinances; but no evidence of that kind was offered. Section 492 of the Code provides as follows: "Section 492. All ordinances shall, as soon as may be after their passage, be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer of the council and the clerk; and all by-laws of a general or permanent nature, and those imposing any fine, penalty, or forfeiture, shall be published in some newspaper of general circulation in the municipal corporation; and it shall be deemed a sufficient defense to any suit or prosecution for such fine, penalty, or forfeiture to show that no such publication was made. * * * And such by-laws and ordinances shall take effect and be in force at the expiration of five days after they have been published." The minute book of the town council and the ordinance book showed that the ordinance was passed and properly recorded and authenticated in May, 1874, but no publication in a newspaper or otherwise was shown.

This is not a suit or prosecution for any fine, penalty, or forfeiture authorized by the ordinance; hence

the provision of the section quoted which applies to actions of that kind does not apply in this case. In *State v. King*, 37 Iowa, 469, a prosecution for the sale of beer in violation of an ordinance, it was said that the ordinance, as found in the proper book of the town, and offered in evidence without objection, was to be considered *prima facie* valid and in force. But it was also said that its validity could have been questioned by objections made when the record was offered or by evidence in defense. In this case the defendant might have shown that the ordinance had never been published as required by law, but, if the record offered was not *prima facie* evidence that the ordinance was in force, it was not required to do so; the burden being upon the plaintiff to show due publication.

It is said it will be presumed that the officers of the town discharged their duty by making publication of the ordinance as required by law. It will be presumed, where publication in a newspaper is shown, that the newspaper was one of general circulation, and when the ordinance is sufficiently certified that it was duly recorded. *Town of Bayard v. Baker*, 76 Iowa, 222. It will also be presumed that a record of the council in regard to the passage of the ordinance is correct. *Town of Eldora v. Burlingame*, 62 Iowa, 35. And no doubt there are other facts of a preliminary or incidental nature, and essential to final action, which will be presumed when such action is shown; but the statute under consideration does not authorize such a presumption. It provides that proof that the required publication has not been made shall be a sufficient defense to any suit or prosecution for a fine, penalty, or forfeiture. It cannot be said, however, that such a defense would not avail in any other case, for the reason that the statute also provides that by-laws and ordinances requiring publication shall take effect and be in force at the expiration of five days after they have been published; and it necessarily follows that they would not take effect

before that time. But an ordinance cannot command nor forbid before it takes effect. Until that time, so far as the public is concerned, it is a mere nullity, creating no obligation or liability. Therefore, in any case in which the prosecutor or the plaintiff depends upon the effect of an ordinance which the law required to be published, proof that the publication had not been made would establish a sufficient defense. In order to give all parts of the statute under consideration effect, the theory that such a defense can be made only to an action for a fine, penalty, or forfeiture must be rejected. A better, and, in our opinion, the proper, interpretation is that in the class of actions referred to the publication of the ordinance need not be shown, but will be presumed from proof that it was duly passed, recorded, and authenticated, and that the burden of rebutting that presumption is upon the defendant, while in other cases where objection is made no presumption of that kind exists, but the ordinance must be proven as any other material and disputed fact. It may be said there is no sufficient reason for distinction between the two classes of cases, but that was a question for the general assembly to determine, and we need not concern ourselves with it.

II. The part of the ordinance which limits the rate of speed was contained in an amendment which was intended to be a substitute for one section

2. City ordinances: amendment.

of the original ordinance. The defendant objected to it for the reason that it does not contain the ordinance which it was designed to amend. Section 489 of the Code provides that "no ordinance or section thereof shall be revised or amended unless the new ordinance contain the entire ordinance or section reviewed or amended, and the ordinance or section so amended shall be repealed." The new ordinance does not attempt to amend the old by adding to or taking from one of its sections; but contains in

full the section as it was designed to be when amended. That was a sufficient compliance with the statute. *Town of Decorah v. Dunstan*, 38 Iowa, 96.

III. A further objection to the ordinance made by the defendant is that it is unreasonable. The crossing

3. RAILROADS: speed regulated by city ordinance: reasonableness.

was three-fourths of a mile from the depot. The evidence tended to show that the right of way of the defendant was fenced on each side. It is fenced north of the crossing and also southward towards the depot. The town of West Liberty is almost wholly east of the railway, none of the streets extending across it, and but few houses are on the west side. There is a private crossing between the place of the accident and the depot. The land west of the right of way is used for agricultural purposes, and that between it and Elm street is occupied by two houses, and is otherwise used as a common. It is said that, in view of these facts, it was unreasonable to require the defendant to operate its passenger train three-fourths of a mile from the depot at a rate of speed not exceeding ten miles an hour, and the case of *Meyers. v. C., R. I. & P. R'y Co.*, 57 Iowa, 556, is relied upon as a case in point. In that case an ordinance which prohibited the running of a railway train at a higher rate of speed than four miles an hour for a distance of three miles through agricultural lands outside the inhabited portion of the city, on a track fenced on both sides, was declared to be unreasonable. In this case it is not shown how far the right of way is fenced from the crossing towards the depot, nor is it shown how much crossing of the right of way there is nor the amount of travel on Elm street. Where the record is silent as to material facts, they must be presumed to tend to justify the ordinance. Elm street may be one of the main thoroughfares of the town, and the travel from it on the Muscatine road over the crossing may be large. That the cross-

ing is a dangerous one, when trains from the north are permitted to pass it at a high rate of speed, is evident. One half of the crossing, and all that part of it used by teams at the time of the accident, was within the corporate limits of the town of West Liberty, and it was the duty of the town to protect, so far as it had power, persons who used the crossing. In view of all the facts in the case, we cannot say that, as a matter of law, the ordinance was unreasonable.

IV. The jury was instructed that, if the driver was guilty of negligence which contributed to the injuries in question, such negligence would prevent a recovery by the plaintiff only in case the driver was under the control and direction of the plaintiff, or in case she had the right to control and direct him. It is insisted that this was erroneous, and that as a matter of law, under the undisputed facts of the case, the negligence of the driver was imputable to the plaintiff. She was a resident of the state of Pennsylvania at the time of the accident, and had no knowledge of the proper route to take to reach her brother's residence. That matter was left to the determination of the liveryman and his driver. She gave the driver no directions as to the course to take, and assumed no control over him. The liveryman claimed that he had no control over the driver after he left the stable. There was a conflict in the evidence as to who controlled him, which was rightly submitted to the jury for determination. See *Nesbit v. Town of Garner*, 75 Iowa, 315.

4. NEGLIGENCE: contributory negligence of servant.

V. The appellant complains of the eighth paragraph of the charge on the ground that it relieved the plaintiff of the burden of showing herself free from contributory negligence. But the sixth paragraph of the charge instructed the jury as to the obligation upon the plaintiff in that respect, and the charge, as an entirety, was not misleading.

For the error in admitting in evidence the record of the ordinance, without further proof, the judgment of the district court is REVERSED.

ROTHROCK and KINNE, JJ., concur in the result, but do not wish to be considered as bound by the views expressed in the third division of the opinion.