MINERVA FOUNTAIN, Appellee, v. CITY OF DES MOINES,
Appellant.

**Municipal corporations:** DEFECTIVE STREETS: NEGLIGENCE: EVIDENCE.
1  In this action for personal injury caused by an alleged defective
   street, evidence that the carriage in which plaintiff was riding
   tipped over when the wheels were driven into a ditch in the mid-
   dle of the street, was sufficient to take the issue of negligence on
   the part of the city in permitting the existence of the ditch to the
   jury.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE.  The mere fact that
2  the driver of a carriage knew of a ditch in the middle of the street,
   into which he drove the wheels of the carriage when it was dark,
   causing the carriage to overturn and injure plaintiff, will not estab-
   lish contributory negligence as a matter of law.  The question of
   the contributory negligence of plaintiff's husband in thus driving
   into the ditch was properly submitted to the jury.

*Appeal from Polk District Court.*—HON. JAMES P. HEWITT,
Judge.

SATURDAY, MARCH 14, 1914.

ACTION for damages for personal injuries received in an
accident upon one of the streets of the defendant, and caused,
as alleged, by reason of an obstruction negligently permitted
by the defendant.  The obstruction consisted of a ditch and
an embankment.  There was a verdict for the plaintiff, and
a judgment entered thereon.  The defendant appeals.—
*Affirmed.*

*R. O. Brennan, H. W. Byers,* and *Eskil C. Carlson,* for
appellant.

*Clifford V. Cox* and *Robt. J. Bannister,* for appellee.

EVANS, J.—The appellant presents but one question for our consideration: Was the evidence sufficient to warrant submission to the jury? The contention of appellant is that no negligence was shown on the part of the defendant, and that contributory negligence was conclusively shown as against the plaintiff and her husband, who was driving the vehicle from which the plaintiff was thrown.

The accident in question occurred at about 8 o'clock on the night of October 22, 1910. It occurred upon East Twenty-second street near the north line of intersection of such street and Des Moines street. The first is a north and south street, and the second an east and west street. Neither street was paved; but both streets were in use. There was some grading done at their intersection. There was some grading also upon other parts of East Twenty-second street. Near the center line of Twenty-second street, and perhaps a little east thereof there was a shallow ditch described by the witnesses as having the appearance of a former "dead furrow." The south end of this ditch was a few feet south of the north line of the intersection of · the two streets, and the same extended north along Twenty-second street for a short distance. It was four or five inches deep at its south end, and grew slightly deeper as it extended north, reaching a depth of six inches. It was about two and one-half feet wide. On the west side of it, however, at one place, there was an embankment thrown up so that the difference of elevation between the top of the embankment and the bottom of the ditch was two feet or more. The travel over the street passed on either side of the ditch. On the night in question the plaintiff was riding, in company with her husband and her two children, in a two-seated surrey. The husband was driving. The plaintiff was riding upon the back seat, with a sleeping child upon her lap. They were returning home from "down town," and going north and east. The night was dark. There were no lights in the vicinity. As

1. MUNICIPAL COR-
PORATIONS: de-
fective streets:
negligence: evi-
dence.

they turned north, the husband failed to avoid the ditch. He drove unintentionally so that the right wheels of the surrey came into the ditch and the left wheels upon the embankment. This resulted in the tipping over of the surrey, and the throwing of the occupants to the ground, whereby the plaintiff was injured. The husband had been familiar with this street and the ditch thereon for more than four years, and had driven thereon almost daily with the same horse. Mrs. Fountain had also passed over the street many times in company with her husband, but had never observed the existence of the ditch. The foregoing is a sufficient statement to justify the submission of the question of the defendant's negligence. This feature of the case is not dwelt upon in the appellant's argument. It is sufficient to say that the question of defendant's negligence was clearly a jury question.

The principal emphasis of appellant's argument is devoted to the claim of contributory negligence on the part of the plaintiff and on the part of her husband. Appellant's brief sets out the following testimony of the plaintiff in support of its contention:

Mr. Fountain was driving; I was sitting in the back seat, and Blanche was with me; Orville was in the front seat with Mr. Fountain. We were in a two-seated surrey, with no top; there was no light burning at Twenty-Second and Des Moines streets, and there was no light at Twenty-Second and Lyon, the next street north. If there was any moonlight there wasn't enough to make it light. If I can remember rightly it seems to me just as we got home the moon came up in sight. It was dark as we drove across Grand avenue just before we upset. We turned on Twenty-Second street and went down a little west and got into the ditch and tipped the buggy over, and we all fell out, spilt the groceries and everything out we had in the buggy. I fell out the right side; that was the east side. When we were riding just before the accident I was sitting on the left-hand side; Blanche was on the right; I had my limbs crossed to raise her head; she was asleep. I had my limbs crossed to

2. SAME: contributory negligence: evidence.

raise her head up a little, so her head would not be lower than her body.   Her head was resting on my lap.

Cross-examination:

I don't remember whether we were down town the Saturday night before the accident or not; if it was a nice evening I expect we were; we most always came down Saturday afternoon or evening.   I don't remember about that evening; but it was our habit to come down every Saturday evening when the weather was nice.   I think October that year was nice nearly all month; I don't think, however, we were down the same week; I did not go down town very often during the week.   I don't know just how many times we had passed this place in the two years we had this horse; it was probably three or four times a month; I expect that many times, anyway. When we came to town I came with my husband in the surrey and the same horse, and nearly always this same route.   We would go from our house west on Maple street to Twenty-Second, and then would turn south until we were at the turn at Des Moines street, and then, instead of turning into Des Moines street, we would go diagonally across an open half block, and then on Twenty-First street and down Grand avenue into town.   In the summertime, in nice weather, we went down town every Saturday evening.   There were no lights there any of the nights that we drove by, either on the corner nor on Twenty-Second street.   The only lights were the lights from the windows of the houses from along the way in this neighborhood.   About five months after I was injured is the first time I ever noticed this ditch in Twenty-Second street.   It was about the last of March, 1911.   I paid very little attention to the street or anything about the street or the character of the ground over which we were driving when we took these trips to town.   I relied upon my husband to look after the road and see where he was going.   On the night of the injury it was some time between 5:30 and 6:00 o'clock, I think, when we drove to town.   I don't remember how fast we drove that night; I don't think we were driving very fast along Twenty-First street, because it was dark.   It did not seem to me we were going fast; we were not in any particular hurry at all.   There was nothing about the weather that was alarming, or to hurry us in any way; there was

nothing along the road that created any disturbance. The horse was perfectly gentle. He had never shown any disposition to run away or shy or run or kick or get scared at anything at all. There was nothing that I know of to prevent Mr. Fountain from having complete control of the horse. I cannot think of anything to affect either his judgment or power to guide the horse. There was nothing to distract his attention, or interfere with him in any way; I remember that quite distinctly. I relied entirely upon him to exercise the necessary care in driving the horse and looking out for bad places in the road; I thought that was a pretty smooth street along there, because I never noticed that ditch there and that diagonal street, and there was nothing there. I never noticed anything between our home and town that was not all right. I never paid any attention to the driving; I could have seen the ditch in the daytime, if it was light, if I had looked. If I had paid any attention to where we were going that evening when we were coming in, I would have seen all about this ditch. I may have seen there were no lights and no place for lights anywhere around there. I never paid any attention as to whether there were any lights there or not. The first time I saw the ditch was in March after the accident. Mr. Fountain wanted me to see that ditch, so we stopped on Grand avenue right in the middle of Twenty-Second street, where we could look right straight down the middle of the street, and it was right in front of us. It seemed to be right in the center. The ditch was perfectly plain, so, if any one was driving and noticing and paying any attention, they could see it. I never looked at the streets; I never did the driving, and I never wanted to. I relied absolutely on my husband. It was in the daytime, and I could see it plainly for at least a block or so by looking up Twenty-Second street. There was no obstruction of any kind that prevented anybody from seeing it that looked. The first time I realized that we were at the road was when we got into that rough place we started to go over; it seems the wheels went up on that dirt that was thrown up, and the front wheel got down in the ditch, and we started to go over before I noticed we was out of the track. We tipped pretty soon after we hit the ditch. Of course we could not tell until the other wheel got into the ditch, the back wheel got in. I noticed it as soon as the front wheel got off; we did not tip over until the back wheel got in; I did not see it; I just felt the rig

go over. I felt something wrong the minute the first wheel got into the ditch. I don't remember passing over anything rough until the wheel dropped down.

We are not prepared to say that the foregoing discloses any evidence of contributory negligence. It is enough to say that it does not show contributory negligence as a matter of law. The question was submitted to the jury, and no complaint is made as to the form of the instruction.

Much stress is laid upon the alleged negligence of the husband. It is urged that he knew the condition of the street, and knew the danger presented thereby. It has been held repeatedly by this court that mere knowledge of the defective condition of the street would not charge the husband with negligence as a matter of law. It still remained a question for the jury whether as a reasonably prudent man he believed he could pass the defective place in safety. *Neeley v. Mapleton,* 139 Iowa, 582; *Cook v. Hedrick,* 135 Iowa, 23; *Robertson v. Waukon,* 155 Iowa, 260; *Jackson v. Grinnell,* 144 Iowa, 232; *Hollingsworth v. Ft. Dodge,* 125 Iowa, 627; *Harvey v. Clarinda,* 111 Iowa, 528; *Graham v. Oxford,* 105 Iowa, 705; *Crandall v. Dubuque,* 136 Iowa, 663. The evidence in the case clearly brings it within the rule announced in the above-cited cases.

It is argued by appellee that, even if the husband were negligent, such negligence could not be imputed to the plaintiff. This question does not arise upon this record, because the trial court submitted the case to the jury upon the theory that the negligence of the husband might be imputed to the plaintiff. Whether right or wrong, this instruction furnishes no ground of complaint to the appellant, and no complaint is urged at this point. On the general question of imputed negligence, see *Nesbit v. Garner,* 75 Iowa, 315; *Larkin v. Railway Co.,* 85 Iowa, 504; *Bailey v. Centerville,* 115 Iowa, 271; *McBride v. Des Moines City Ry. Co.,* 134 Iowa, 398. We are

clear in our opinion that the evidence was such as to require submission to the jury.

The judgment below is therefore—*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.