MARY E. WITHEY, Appellee, v. THE FOWLER COMPANY, Appellant.

**Evidence:** LEADING QUESTIONS. Where the cross-examination of plaintiff, suing for injuries received while riding in an automobile, suggested or assumed that she was riding under some arrangement or agreement with the other occupants of the car, it was proper for her to state on redirect examination how it was she happened to' go riding at that time, and who asked her; as the inquiry was material on the question of whether she was a guest, or the owner or driver of the car.

**Same:** LEADING QUESTIONS: DISCRETION: EVIDENCE. To justify the reversal of a cause because of the overruling of objections to leading questions there must be a clear abuse of the court's discretion in so doing and an apparent prejudice of the rights of the parties. In the instant case no prejudice appears.

**Personal injury:** MARRIED WOMEN: DAMAGES: LOSS OF EARNING CAPACITY. Marriage does not deprive a woman of her right to pursue an independent occupation, and she may recover for injuries

depriving her of her earning power in such occupation; and the fact that she may not be engaged in such pursuit at the time of the injury, or may have abandoned the same, will only affect the amount of her recovery.

**Municipal corporations:** ORDINANCES: SUBJECT: TITLE. An ordinance regulating vehicles when upon the streets, whether in use or left standing, and also providing how they shall be driven and where they shall be placed when standing, and another section dealing with street obstructions, is not objectionable as embracing more than one subject; and the subject treated is sufficiently expressed by the title, ''An ordinance governing and regulating traffic on the streets.''

**Evidence:** EXPERT OPINION. The distance in which a loaded truck could be stopped when hauled along a substantially level paved street is a matter concerning which an experienced driver may give his opinion in evidence. In the instant case the evidence is held to show that the street at the point where the truck struck the automobile, causing plaintiff's injury, was practically level.

**Evidence:** EXAMINATION OF WITNESSES. Where no attempt is made to impeach a witness, it is not proper in the examination of another witness to put into his mouth the answer sought, concerning what the former said as a witness in another proceeding relating to the same matter.

**Evidence:** SCOPE OF CROSS-EXAMINATION. Where one who witnessed the collision of a truck with an automobile had described the movements of each and stated that he anticipated the collision, it was not prejudicial to ask him on cross-examination if he anticipated that the driver of the truck would turn sharply across the traveled way without looking to see if any one was approaching, although the anticipations of the witness were not material and might well have been omitted.

**New trial:** MISCONDUCT OF COUNSEL. The remark of counsel, in objecting to a question as leading, ''Why can't he ask him what he did? There is only one reason and that is he wants to tell the witness as near as he can,'' was not prejudicial misconduct.

**Municipal corporations:** ORDINANCES: CONSTRUCTION OF TERM ''ALLEY.'' A private alley connecting with the street and used for driving to and from the street, is an alley connected with the street, within the meaning of an ordinance defining the manner in which vehicles shall pass from the street into an intersecting alley.

Negligence: AUTOMOBILE ACCIDENT: CONTRIBUTORY NEGLIGENCE. The fact that plaintiff, as she saw the truck approaching the automobile in which she was riding, realized the danger of a collision and put out her hand and motioned the driver of the truck to stop, when the tongue of the truck struck her hand accidentally, or that she put out her hand because of her instinctive movement to ward off the collision, did not render her guilty of negligence as a matter of law.

Same: IMPUTED NEGLIGENCE. The negligence of the driver of an automobile cannot be imputed to one riding with him simply as an invited guest, in no manner responsible for the course of the machine and assuming no control over the driver. To charge one occupying a car with the negligence of the driver there must be some other relation between them than that of mere host and guest; and the mere fact that both have engaged in a drive for mutual pleasure does not materially alter the situation.

Instructions: REFUSAL OF REQUESTS. It is not error to refuse to give instructions which are sufficiently covered by those given by the court; nor to refuse to give those stating mere abstract legal propositions, without suggesting their proper application to the case.

Same. Where the court gave a requested instruction sufficiently covering the point, refusal to incumber the instructions by repetitions of the same thought in different form was not erroneous.

*Appeal from Black Hawk District Court.*—HON. ROBERT BON-SON, Judge.

SATURDAY, MARCH 14, 1914.

ACTION at law to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Mears & Lovejoy,* for appellant.

*Edwards, Longley & Ransier,* for appellee.

WEAVER, J.—The course of Lafayette street in Waterloo, Iowa, is from northwest to southeast. It is crossed at right angles by Fourth street. About one hundred feet south of

the intersection with Fourth street a sixteen-foot alley opens upon Lafayette. The alley is a private one, maintained for the convenience of the defendant in hauling goods to and from its wholesale warehouse. Lafayette street is paved, is fifty feet wide between curbs, and is bordered on either side by a fifteen-foot sidewalk. A street car track occupies the middle of the paved way. The immediate circumstances attending the accident, so far as they appear to be without material dispute, are as follows: One of defendant's employees with a truck load of goods was driving along the middle of Lafayette street from Fourth street in the direction of the alley. The truck was constructed with low front wheels which would turn under the body of the vehicle. It weighed two tons, and was carrying a load of about five and one-half tons. As this load was moving down the street in the direction of the alley one Loomer, driving an automobile, in the rear seat of which the plaintiff, with others, was riding as an invited guest, turned into Lafayette street from Fourth, along the curb on the right. As the automobile moved at a more rapid pace than the truck, the former had evidently gained on the latter, and was about to pass it when the truck was swung to the right, with the purpose of entering the alley. The automobile in its course near the curb had nearly crossed the alley opening when the heavy truck came into contact with the car, the end of the projecting tongue of the truck crushing the hand of the plaintiff against the body of the car and inflicting a very serious injury. Recovery of damages is sought on the theory that the injury was occasioned by the negligence of the defendant's driver in that he did not exercise reasonable care in the driving and management of the truck. Negligence is further charged in that the driver failed to obey an ordinance of the city, requiring all vehicles to be driven upon the right-hand side of the street upon which they are moving, and, upon turning to the right into an intersecting street, avenue, or alley, such turn shall be made as near as possible to the right-

hand curb. Negligence is also charged because of defendant's failure to have its truck equipped with a brake. The claim of the plaintiff is put in issue by a denial of all the allegations of the petition.

The errors assigned are quite numerous and we shall attempt consideration only of such as counsel have thought of sufficient importance to make the subject of argument, and in so doing shall follow as near as practicable the order of their presentation in the brief.

I. Objection was interposed by defendant to certain questions asked plaintiff by her counsel, on the ground that they were leading and suggestive of the answer desired. The particular incident to which this criticism is directed is the following: After plaintiff had been cross-examined on the part of the defense her counsel addressed to her an interrogatory as follows: "Q. Mr. Lovejoy has repeatedly suggested in his questions, or assumed, rather, in his questions, that you went riding on this morning by virtue of some arrangement or agreement between the four of you. I will ask you to state now to the jury just how it was that you happened to go riding that morning. Who asked you, if anybody did, and just how it happened?" To this the defendant objected as leading and suggestive, and that the language of counsel was improper and not a correct statement of the facts concerning the cross-examination. The objection was overruled, and the witness answered, in substance, that she was riding at the time of the injury in Mr. Loomer's car upon his invitation, extended to her and other friends to drive about and see the city, and that she did not in any way control or direct the movement or course of the car. Aside from the statement with which it was prefaced the question appears to have been entirely unobjectionable. It was a material inquiry whether plaintiff was a mere guest of Loomer in the car, having no control over its management, or was the owner or hirer thereof, and the question was fairly framed to develop the fact.

1. EVIDENCE: leading questions.

It may be conceded that ordinarily counsel should not put a construction of his own upon the course of the cross-examination and embody it in a statement to the witness on redirect examination, but we are wholly unable to discover here the possibility of any prejudice therefrom. The fact that plaintiff was the guest of Loomer in the car, was riding upon his invitation as a mere matter of pleasure or diversion, and without any agency in the management of the vehicle, was in no manner disputed upon the trial. That this court may, upon a sufficient record, reverse the judgment of a trial court for error in overruling objections to leading questions may be admitted, but the general rule is otherwise. To justify a reversal on such grounds requires a clear showing of abuse of discretion and apparent material prejudice to the rights of the objecting party. *State v. Bodekee,* 34 Iowa, 520; *State v. Moelchen,* 53 Iowa, 310; *Hall v. Bank,* 55 Iowa, 612; *Reddin v. Gates,* 52 Iowa, 214; *Hilton v. Mason,* 92 Ind. 157.

2. SAME: leading questions: discretion: evidence.

II. In her petition plaintiff alleged, among other things, that she was a musician and teacher of music by profession, and that the injury to her hand had so crippled it as to prevent her use of the piano and destroyed her ability to teach the use of the instrument. On her examination as a witness she testified that she had been married about twenty-four years; that she had continued her occupation as a music teacher down to a period about six years prior to her injury, during which period she had given no lessons. She also said that prior to her injury she frequently played the piano as a matter of entertainment and on public occasions. She was then asked by her counsel to what extent, if any, the injury to her hand would affect her ability to teach piano and organ playing in the future should she desire to do so, and, over the objection of the defendant, she was allowed to answer, "It would hinder me in this way: That I have to execute and show the pupil many times how to do the piece. It helps them greatly in

3. PERSONAL INJURY: married women: damages: loss of earning capacity.

their lessons, and I could not do it with the left hand." In support of the exception to this ruling and evidence it is argued that, in view of the conceded fact that plaintiff was a married woman, and had not been teaching for several years prior to her injury it should be held that she was not a music teacher in such sense that she could recover damages for being deprived of her power to earn money in such occupation. Further pressing this proposition upon the court's attention, the defendant, in submitting the case, asked the court to charge the jury as follows: "The plaintiff cannot recover in this action for any loss of earning capacity by reason of her inability to play the piano and give music lessons. There is no evidence in this case upon which to base any claim for damages in respect to the loss of earning capacity of the plaintiff, and in estimating the amount of damages, if any, the plaintiff may recover, you will wholly disregard any evidence that has been given in the case regarding the amount of her earnings, if any, as a music teacher, and you will award no damages to the plaintiff on account of any independent occupation of her own." The request was refused. It is earnestly contended for the defendant that, as plaintiff was not teaching music at the time of her injury, and had not been so engaged for several years, and there was no showing of a definite purpose to resume such occupation, the fact of her skill, capacity, and attainments in her profession was wholly immaterial, and entitled to no weight or value in estimating the damages she sustained by her injury. This we think is not the law. That under the law of this state a married woman may pursue an independent business or employment and have, enjoy, and control the fruits thereof, and if negligently killed or injured damages may be recovered by her, or her administrator, with reference to her individual skill and capacity in her separate occupation is of course too well settled to admit of dispute. *Niemeyer v. R. R. Co.*, 143 Iowa, 129; *Fleming v. Shenandoah*, 67 Iowa, 505; *Bailey v.*

*Centerville,* 108 Iowa, 25. To this extent the right of a married woman is not affected by her marriage relations.

It has been held, and upon unimpeachable grounds, that a man's education, training, skill, and capacity to earn money is a proper subject of consideration in estimating damages for his physical injury or death even though he is not in actual employment at the time of his death, or even if he has retired therefrom with no present intention of resuming it. *Simonson v. R. R. Co.,* 49 Iowa, 90. In other words there is value in a man's power or capacity to earn money. *Railroad Company v. Ward* (Ky.), 44 S. W. 1112. His natural and acquired power, skill and capacity to earn money, are in a very proper sense his capital. Its value may be lessened, but is not necessarily wholly eliminated because not employed. The same is true of a woman, except so far as it may be affected by her marriage. Marriage, as we have seen, does not take away her right to pursue an independent occupation. If she suspends or abandons such occupation, and devotes her energies to domestic duties alone, then, except for the effect of a recent statute, loss of time and loss of power and capacity to perform such domestic service would afford her no ground for the recovery of damages; the right of action resting in her husband alone. It happens, however, that chapter 163 of the Laws of the Thirty-fourth General Assembly, which went into effect very shortly before the accident in this case, grants to a married woman the right, among other things, to recover for her loss of time resulting from any injury caused by the negligence or wrongful act of another. Whether this is to be construed as authorizing recovery by her for the loss of earning power in the performance of domestic duties we need not now determine, for, taking the law as it stood prior to this enactment, we think the contention of defendant is not sustainable. When a married woman, after years of employment in an independent occupation, lays it aside for domestic duties even though she has no present intention of returning thereto, there is no presumption of law that she will never resume such

occupation. The future is an unopened book. She may, if she so elects, return to such occupation at any time. Misfortune, widowhood, disability of other members of her family may cast upon her the burden of supporting herself and others. Under such circumstances the occupation in which she has been trained, the skill and capacity developed by her in an independent employment, may constitute an asset or resource of scarcely less value than a bank deposit. True, in estimating damages resulting to her and her estate the fact, if it so be, that she had laid aside her independent employment, with no present intention of resuming it, is a material consideration in determining the damages, if any, which may be recovered. In other words, if she or her estate is found entitled to recover, then the amount of damages, so far as they are affected by her skill, ability, or capacity for independent employment, will be less in proportion to the probability that she would never have made use thereof even had the accident not occurred. Stated in other terms, the fact of a woman's ability and capacity in a skilled employment is always admissible in this class of cases, but the circumstance that she has quit the same, the length of time since she abandoned it, whether such abandonment was intended to be permanent, and the possibility or probability that she may or may not resume the same, are all proper to be considered upon the question of damages.

It follows that there was no error in overruling the defendant's objection to testimony, or the denial of the requested instruction based on the theory that such evidence was wholly inadmissible.

III. Plaintiff pleaded an ordinance of the city of Waterloo relating to the use of its streets, and offered the same in evidence. The ordinance is entitled "An ordinance governing and regulating traffic on the streets of Waterloo, Iowa." By section 2, which is the only part of said ordinance here in question, it is provided, among other things, that persons driving vehicles

4. MUNICIPAL COR-
PORATIONS:
ordinances:
subject: title.

upon any street shall keep to the right-hand side of such street, and that all vehicles shall, upon turning to the right into an intersecting street or alley, pass and turn as near to the right-hand curb as possible. To the offer of this record the defendant objected: First, because it has no application to the facts of this case, it appearing that defendant's truck at the time of the collision was entering by a private way upon defendant's private property, and the terms of the ordinance have no application to a use of the public street and private alley; second, because the ordinance is void, as being unreasonable, uncertain, and indefinite, and, if applied to the facts of this case, it constitutes an illegal attempt to regulate and restrict the defendant's right of ingress and egress between its private property and the adjoining street; third, because the ordinance contains more than one subject, and was passed in violation of Code, section 681; fourth, because neither the subject nor the provisions of said ordinance are clearly expressed in its title; and, fifth, because it has not been shown that the alley or way which the driver of the truck was attempting to enter is a public thoroughfare. The objections were overruled, and the ordinance admitted.

As the points made against the validity of the ordinance are most vital, we give them first attention. Code, section 681, relating to the enactment of ordinances by municipal corporations, provides that "no ordinance shall contain more than one subject, which shall be clearly expressed in its title," and it is against this rule which it is claimed that this ordinance offends because it attempts, not only the regulation of vehicles in use or left standing upon the streets, but also provides how drivers of teams or other vehicles shall be required to drive; how they shall turn into an intersecting street or avenue; how they shall cross from one side of the street to the other side, and how and where vehicles left standing in the street shall be placed; and that another section of the same enactment deals with obstructions in the streets. Little if any more than the reading of this enumeration of

the several regulations said to be embodied in the ordinance is necessary to demonstrate their unity of purpose, and the propriety of gathering them into a single ordinance. *Healy v. Johnson,* 127 Iowa, 221; *State v. Wells,* 46 Iowa, 663; *Dempsey v. Burlington,* 66 Iowa, 689; *Beresheim v. Arnd,* 117 Iowa, 89. They all have direct reference to the use of the public streets of a city where, by reason of the amount of traffic and the great number of vehicles moving in all directions, regulation and order are demanded to avoid congestion and confusion and facilitate the transaction of business. It would be a very unfortunate situation for the government of cities if we were obliged to hold with counsel that the several matters of street regulation to which reference is made in argument are so unrelated and foreign to each other that they can be treated and regulated only by the enactment of separate ordinances.

But it is urged that even if the ordinance is not vulnerable to the objection that it embodies two or more distinct subjects of legislation, it still offends against the requirement that its subject shall be clearly expressed in the title. The particular point there made is that the words, "An ordinance governing and regulating traffic on the streets," do not have any clear or direct reference to the control or regulation of moving vehicles. It is said that "traffic" has relation alone to buying and selling, and the use of the streets as market places and other matters of kindred nature, and that to extend the phrase to include the use of streets as public ways for the driving of vehicles and the transportation of freight and passengers is not justified by the "approved usage of the language." Code, section 48, subd. 2. That "traffic" in its general sense does include buying and selling and exchange of goods, wares, and merchandise is not to be denied, but, like other words, its precise meaning in any given instance depends largely upon the connection in which it is employed. To the mind of one versed in the use of the English language a reference to "street traffic" or "traffic upon the streets"

of a city does not, in our judgment, suggest simply the business of buying and selling and exchanging of commodities, but also the general movements and intercommunication of the people carried on upon our streets, including travel, the driving of vehicles, the hauling of movables, the transportation of passengers, and all the multifarious activities which may properly avail themselves of the use of a public highway. Such employment of the word appears to be entirely legitimate, and so clearly so that we think that a mere reading of the title of this ordinance must instantly and inevitably direct the thought of the reader to the very matters which it attempts to regulate. Such definition finds support in our standard lexicons. For example, the most recent edition of Funk & Wagnall's Dictionary includes, within the accepted meanings of "traffic," the "business of transportation." So also the Century Dictionary defines it, not only as an interchange of goods, but also as "the coming and going of persons or the transportation of goods along a line of travel." In the case before us the plaintiff with others was being driven along the street in a moving vehicle, and the defendant by its employee was transporting goods along the same street in another vehicle, each movement being an item among those things which make up what we speak of and what the ordinance includes in the comprehensive term "traffic on the streets." We think the question is not open to reasonable doubt, and that the objection to the ordinance because of insufficiency of title must be overruled.

IV. The extent of the record to be considered requires us to abbreviate our reference to other alleged errors in rulings upon the introduction of testimony. One Baldwin, who

5. EVIDENCE: expert opinion. was shown to be an experienced driver, was asked by plaintiff's counsel for his opinion of the time or distance in which such a truck load could be stopped when being hauled along a substantially level paved street, and the defendant excepts to the admission of his answer over the usual general objections. Contrary to the con-

tention in argument, we think there was sufficient evidence of the experience and competency of the witness, and the question was directed to a matter upon which such a witness may give opinion evidence. It may be true that some members of the jury were men whose own experience and observation were equal or superior to that of the witness, but of twelve jurors drawn at large from different ranks and occupations in life it is safe to say that some, if not all, would find the opinion of experts to be of value in properly weighing and applying the testimony.

But it is further objected that the question in this case embodied the thought of a level street, when it appears that the truck was going down a sharp incline. As we read the testimony the street had no marked grade or incline longitudinally. Measuring at right angles from the middle line of the street in the direction of the alley, there was a slight descent, amounting at a point halfway to the curb to only six one-hundredths of a foot, but from this point the slope was accentuated, reaching sixty-three one-hundredths of a foot at the gutter. It thus appears the only incline of any serious moment was within the last twelve and one-half feet of the curb. The driver says that his truck measured eight feet between the rear and front axles, and that the tongue extended thirteen feet beyond the front axle. The length of the outfit from the end of the tongue to the rear of the bed was twenty-four feet, five inches. There was evidence tending to show that the truck was driven along the street railway track astride the left-hand rail until the driver turned to swing into the alley. Now as the automobile must have occupied at least four to six feet next to the curb, and as it was the projecting end of the tongue which did the damage, it follows of necessity that at the time of the collision the rear end of the truck had not yet left the car track, and its movement could not have been materially affected by the slope or incline toward the gutter. Hence we think the question put to the witness was not objectionable as being based upon a

false hypothesis. This is equally true if we accept the defendant's claim that the driver came down the street on the right-hand side of the car track.

It appears that following this accident there was some ,sort of hearing in the police court at which Loomer, the driver of the automobile, was examined as a witness. One

6. EVIDENCE: examination of witnesses.

Mueller, who was present at that hearing, was examined as a witness for the defendant in this case, and, among other things, he was asked if Loomer, on being questioned why he did not stop his automobile, answered that he did not have to stop; that he had a right to be on that side of the street. The answer was ruled out on the plaintiff's objection. In this there was no error. In the first place, in the absence of any offer to impeach Loomer, it was not competent for counsel to put the answer sought in witness' mouth. Furthermore it would at most have bearing only on the question whether Loomer's negligence did not contribute to the accident, and for reasons hereinafter stated we think his negligence cannot be imputed to the plaintiff.

One Heinz, an employee of defendant, testifying in its behalf, said he saw both the truck and auto approaching the opening of the alley, and described their movements as they

7. EVIDENCE: scope of cross-examination.

appeared to him, and, among other things, said he anticipated the automobile was likely to collide with the wagon because of the direction in which they were moving. He was then asked by plaintiff's counsel whether he anticipated that the driver of the wagon would turn his team sharply across the traveled way without looking to see whether any one was coming. This was answered in the negative. In this we think there was no departure from the proper scope of cross-examination. The impressions and anticipations of the witness were, however, matters of no material moment, and might well have been omitted. It is not conceivable that any substantial prejudice to defendant could have resulted therefrom.

V. Prejudicial misconduct of counsel is charged because of the following incident: Counsel for plaintiff was objecting to the course of examination of a witness for defendant on the ground that the inquiry was leading, and at one point emphasized the objection by saying to the court: "Why can't he ask him what he did? There is only one reason, and that is he wants to tell the witness as near as he can." The remark was more petulant than polite, but in the stress and strain of a warmly contested jury trial the quality of professional temper is often severely tried. Experience and observation teach us, however, that wounds thus inflicted are not often so deep or so serious that they may not be more effectually healed by a visit to the nearest cigar counter than by, any dressing which the court can apply. This case presents no exception to that rule. Jurors must be given the credit of ordinary common sense and honest purpose to dispose of questions submitted to them upon the evidence under the instructions given by the court, and may be presumed to disregard the ordinary interchange of left-handed compliments between opposing counsel except as matters of momentary diversion.

8. NEW TRIAL: misconduct of counsel.

VI. A motion to direct a verdict for the defendant on the ground that no culpable negligence on its part is disclosed by the testimony was overruled, and this is said to be error. The objection is not borne out by the record. The point is made that the alley, not being a public way, the manner of entering it with team and truck does not come within the terms of the ordinance. But we cannot so hold. Here was a sixteen-foot alley opening out upon the public street into and out of which the teams and trucks of defendant and of others were being driven. It was open to the public to the extent that, as was said in behalf of the defendant on the trial, any one who desired to do so could drive or pass through its course so long as the property of the proprietors was not interfered with. But even if devoted wholly to private use, it was an

9. MUNICIPAL CORPORATIONS: ordinances: construction of term "alley."

alley connected with the street, and therefore within the express language of the ordinance. The reason which called for such regulation governing the entrance to one alley applies with equal urgency to all, without regard to whether it be public or private. The purpose of requiring the driver to keep to the right side and make his turn into the alley as near as practicable to the right curb was evidently to prevent this very class of accidents by avoiding, so far as possible, the "pocketing" between the turning vehicle and the curb of other vehicles following their proper course along that side of the street. Whatever may be the truth as to the course taken by the driver of the truck, whether in the middle or to the left of the middle of the street, as claimed by plaintiff, or to the right of the middle as claimed by defendant, we think it was fairly open to the jury to find that, had he exercised reasonable watchfulness to look to his right or to control the movement of his team and truck, the collision would have been avoided. He knew, or was bound to know, that other vehicles moving along that side of the street were liable to be approaching along the curb, and that his entrance into the alley opening would interrupt such travel. Whatever may have been his exact course it is perfectly clear that he was not driving near the right-hand curb, and drivers of other vehicles moving from the rear in the same direction, and keeping to the curb, were not bound to anticipate that he would swing across their line of travel without exercising due care to avoid running into them. Indeed it seems hardly possible that the collision could have happened at the place and in the manner described by both parties had he used any fair degree of care to guard against the dangers incident to such use of the highway. If he was negligent, then his negligence was that of his employer; and, to say the very least, there was no such failure of evidence on the part of plaintiff as to call for a directed verdict against her.

It is next said that plaintiff herself was negligent. Her testimony tends to show that, as she saw the near approach

of the truck and realized the danger of collision, she put out

**10. NEGLIGENCE: automobile accident: contributory negligence.**
her hand, motioning the driver of the truck to hold up, when the forward thrust of the truck struck the palm of her hand, whether by sheer accident or because of an instinctive movement on her part to ward off the threatened stroke is not entirely clear, and her injury followed as already described. Because of her action in this respect we are asked to hold that as a matter of law she was guilty of contributory negligence. The statement of the circumstances demonstrates the unsoundness of the objection. Plaintiff was confronted with a sudden peril. Her effort to attract the driver's attention and avert the collision was a proper one. The thrusting out of her hand was at least a natural movement, even if a futile one, and to lay down the rule that an act so humanly natural in a sudden and alarming emergency is negligence as a matter of law would be to overturn the most fundamental principles of the law governing recoveries for personal injury.

In this connection we may as well consider the further objection here made, and also again raised upon the charge to the jury, that Loomer, the driver of the automobile, was

**11. SAME: imputed negligence.**
negligent in the management of the car, and that such negligence is in some way imputable to the plaintiff. Of the fact that plaintiff was the guest of Loomer in the car, that she was in no manner responsible for its control or movement as owner, proprietor, or hirer—there is not the slightest dispute. That the negligence of the person giving the invitation is not to be imputed to an invited guest under such circumstances is the settled law of this state. *Nesbit v. Garner*, 75 Iowa, 314; *Larkin v. Ry. Co.*, 85 Iowa, 504; *Bailey v. Centerville*, 115 Iowa, 271. Counsel do not deny the authority of these precedents, but say the court should have submitted to the jury the question whether plaintiff and the driver were not engaged in a common enterprise, and, if so, the conduct and negligence, if any,

of Loomer would be imputable to plaintiff. We can readily conceive that plaintiff and Loomer might have been driving together under circumstances which would justify the conclusion that they were engaged in a common enterprise, but certainly such common purpose or interest is not to be inferred from the fact that they were riding in the same vehicle, one of them driving and managing the same, while the other occupied another seat, passively going wherever the driver saw fit to direct their course. Nor can it be inferred from the fact that the latter accepted the invitation of the former to ride as a matter of simple pleasure or outing. Indeed the fact that one invites and the other accepts a simple invitation of this kind, without suggestion of some common end to be accomplished by their united effort or agency, tends to negative any such relation.

In none of our cases are the conditions ordinarily necessary to justify an imputation of a driver's negligence to his passenger or companion more succinctly or concretely stated than in *Larkin v. Ry. Co.*, 85 Iowa, 504. In that case the plaintiff engaged at a livery stable a team and driver to take her to the home of a friend in the country. In attempting to cross a railway track which intersected their route of travel, they were struck by a passing train, and plaintiff received an injury. In an action against the railway company to recover damages the defendant sought to impute to plaintiff the alleged negligence of the driver. Upon this contention the court charged the jury that the driver's negligence would prevent a recovery only in case it was found that he was under the control and direction of plaintiff, or in case she had the right to control or direct him, and the rule of law thus stated was approved by this court. Of the facts in the case the court said that plaintiff had no knowledge of the proper route to her place of destination; that such matter "was left to the determination of the liveryman and his driver. She gave the driver no directions as to the course to take, and assumed no control over him." As there was a dispute in that

case upon some of these propositions it was properly submitted to the jury. But in the case before us there is no conflict, and the jury would not have been justified in imputing Loomer's negligence, if there was any, to the plaintiff.

It is said that the ride being taken could be considered a common or joint enterprise within the law because the trip was being taken as the result of an arrangement or agreement between Loomer and plaintiff and another friend the evening before the accident, and all were riding together for the common pleasure to be so found. The extent of this arrangement seems to have been that plaintiff, a nonresident of the city, was visiting a friend in Waterloo, and on Sunday evening Loomer and his wife called upon them. Before leaving Loomer said in substance that if they would like he would be pleased to take them out and let them see how the town had grown since their previous visit. The invitation was accepted, and it was arranged that he would call for them on the following morning, as he in fact did. This in our judgment has no tendency to show a joint undertaking or enterprise in which either party assumes, or is charged with, any responsibility or liability for the negligence of the other. It is no answer to say that both driver and his guest were out for the pleasure or recreation to be derived from the ride. If A. accepts the invitation of B. to walk with him to church, or to the postoffice, or as a matter of mere recreation, and while so engaged A. is injured by the negligence of C. to which B.'s want of care in some manner contributes, counsel would not think of insisting that B.'s negligence should be imputed to A., and thereby release C. from liability for his tort. If not, then in what manner is their relation changed if, instead of inviting him to walk, A. politely invites B. to get into his carriage and ride to church, or to the postoffice, or for an hour's diversion?

It is somewhat difficult to state a comprehensive definition of what constitutes a joint enterprise as applied to this class of cases, but it is perhaps sufficiently accurate for

present purposes to say that to impute a driver's negligence to another occupant of his carriage, the relation between them must be shown to be something more than that of host and guest, and the mere fact that both have engaged in the drive because of the mutual pleasure to be so derived does not materially alter the situation.

There was no evidence upon which the jury could have properly found plaintiff chargeable with the negligence of Loomer, and there was no error in refusing to direct a verdict for defendant on that ground, or in refusing to submit the question to the jury.

VII. Various other exceptions preserved by defendant relate to the charge to the jury and the refusal of requested instructions. Most of these points are covered by the discussion already had, and we shall not further consider them. Some of the other questions thus raised are sufficiently covered by the charge given by the court.

12. INSTRUCTIONS: refusal of requests.

Still others of the requests for instructions state mere abstract legal propositions without any suggestion or direction to the jury for their proper application to the case in hand, and there was no error in refusing them.

Several of these requests bore upon the proposition that if the proximate cause of the collision was the negligence of Loomer, then the injury to plaintiff could not be charged to defendant and she could not recover. One request sufficiently covering that point was in fact given to the jury, and the court rightly declined to incumber its charge by a repetition of the same thought in different forms.

13. SAME.

Concerning the error assigned upon the court's refusal to charge the jury that no consideration should be given the plaintiff's profession as a music teacher, we have already sufficiently indicated our views. It ought to be said perhaps that, while refusing the instruction asked, the court in charging the jury seems in effect to have excluded that feature

of the case as an element to be considered in the estimate of damages. Upon the measure of damages the court said that if the jury found for plaintiff, "the measure of her recovery is such sum as will fairly compensate her for injuries directly resulting in consequence of defendant's negligence, which would include inconvenience, disfigurement, and pain of body and anguish of mind which she has suffered in consequence of the injury, and such, if any, as it is reasonably certain she will, in consequence of such injuries, be subject to in the future," also for expenses incurred for physicians and nurses and for medical and hospital expenses made necessary by such injury. We think the jury must have understood that in finding plaintiff's damages they were confined to a consideration of the elements thus enumerated, and if there was any error in failing to mention the matter of plaintiff's profession or her loss of time, the prejudice, if any, was to the plaintiff rather than to the defendant.

A painstaking examination of the record reveals no prejudicial error, and the judgment below is—*Affirmed.*

LADD, C. J., and EVANS and PRESTON, JJ., concurring.